CARMINE MARABELLO, Respondent, v CITY OF NEW YORK et al., Appellants, et al., Defendants.

Second Department, February 14, 1984

APPEARANCES OF COUNSEL

*Frederick A.O. Schwarz, Jr., Corporation Counsel* (*Leonard Koerner* and *Irving Genn* of counsel), for appellants.

*Lipsig, Sullivan & Liapakis, P.C.* (*Roberta Ashkin, Richard Kokel* and *Dennis Lopez* of counsel), for respondent.

OPINION OF THE COURT

BOYERS, J.

This appeal raises a novel issue, namely, whether the doctrine of continuous treatment (see *Borgia v City of New York,* 12 NY2d 151; CPLR 214-a) may be applied to toll the 90-day period within which a notice of claim must be filed (see General Municipal Law, § 50-e; New York City Health and Hospitals Corporation Act, § 20, subd 2 [L 1969, ch

1016, § 1, as amd L 1973, ch 877, § 1]) where a plaintiff patient is successively treated for the same or related illnesses or injuries by different municipal medical facilities under the aegis of the New York City Health and Hospitals Corporation. We conclude that while the continuous treatment exception may be applied under such circumstances, that principle is, as a matter of law, inapplicable to the particular facts of this case.

Recognizing that "the provision and delivery of comprehensive care and treatment of the ill and infirm, both physical and mental, are of vital and paramount concern and essential to the protection and promotion of the health, safety and welfare of the inhabitants of the state of New York and the city of New York" (New York City Health and Hospitals Corporation Act, § 2 [L 1969, ch 1016]), and finding that there were "inadequate general and specialized health care facilities" in New York City, the State Legislature, in 1969, created a separate entity to operate the municipal health facilities in our city, namely, the public benefit corporation known as the New York City Health and Hospitals Corporation (New York City Health and Hospitals Corporation Act, § 2 [L 1969, ch 1016, § 1]; *Harlem Hosp. Center Med. Bd. v Hoffman*, 84 AD2d 272, 273, mot to dismiss app granted 56 NY2d 807). "In addition to transferring the operating responsibility from the city to the New York City Health and Hospitals Corporation, this legislation changed the notice of claim procedure. Under the new statutory [system], it became necessary for a party sustaining injury allegedly attributable to [such] health facilities to file a verified notice of claim with the corporation prior to the commencement of a lawsuit" (*Bender v New York City Health & Hosps. Corp.*, 38 NY2d 662, 665; see, generally, New York City Health and Hospitals Corporation Act, § 2 [L 1969, ch 1016]; General Municipal Law, § 50-e).

In the case at bar, plaintiff sustained physical injuries on July 11, 1979 when he was thrown from the motorcycle on which he was riding pillion when that vehicle collided with an automobile.*

---

* While the record indicates that plaintiff sought treatment for low back pain at Coney Island Hospital on July 5, 1979, prior to the accident, he testified at a subsequent statutory comptroller's hearing that he had never had any problems or complaints with

As a result, plaintiff was removed by ambulance to the emergency room of the municipal health care facility known as Coney Island Hospital, where he was treated and released with instructions to return, should he still have pain. Plaintiff returned to the hospital emergency room seven days later and had previously inserted sutures removed from his cheek. Thereafter, plaintiff returned to Coney Island Hospital on several occasions complaining of pain in the low back and sacral areas. He was referred to the Department of Rehabilitation, and treated for "[status post] injury to low back and sacral area", receiving, *inter alia,* seven diathermy treatments at the physical therapy unit between August 14, 1979 and September 11, 1979.

Plaintiff's last three recorded visits to Coney Island Hospital occurred on March 29, July 7 and August 4, 1980. On the first occasion, plaintiff's lumbar-sacral spine was X-rayed and he was given medication, having been diagnosed as suffering from "low back-pain". On the last two occasions, plaintiff registered with the emergency room receiving clerk complaining of pain of the left side and pain in the body from the waist down, respectively. On the first of these visits, plaintiff was called for treatment on three occasions but failed to answer. On the last occasion, his vital signs were taken but he was not examined by a physician since he "walked out" of the emergency room. (As plaintiff's notice of claim referring to the alleged medical malpractice occurring at Coney Island Hospital was served on August 25, 1980, the only visits to that institution within the statutory 90-day period for such service were the visits of July 7 and August 4, 1980.)

At the statutory hearing held by the comptroller on the Coney Island claim, plaintiff testified that he had consulted with private physicians about disturbances in bowel and bladder function. He did not, however, make any complaint with respect to such symptoms to anyone at Coney Island Hospital, because, plaintiff testified, he was not being treated by that institution any longer. These physicians included Dr. Spargel, who referred plaintiff to Dr. Benjamin, a neurologist and Dr. Riscalla, a urologist (who plaintiff first visited about three weeks after the

respect to his back or pain in his legs prior to the motorcycle accident.

motorcycle accident) who referred plaintiff to neurologist Dr. Zuckerman. It was Dr. Zuckerman who, in August, 1980, referred plaintiff to another physician practicing the same specialty, Dr. Kasy. It was Dr. Kasy who arranged for plaintiff's admission on August 8, 1980, to Metropolitan Hospital, another municipal facility under the jurisdiction of the New York City Health and Hospitals Corporation (see New York City Health and Hospitals Corporation Act, § 5, subd 8 [L 1969, ch 1016, § 1]). Plaintiff was found to have been suffering from weakness of the lower extremities which had progressed to paralysis three weeks prior to the Metropolitan admission and thereafter underwent surgery to remove a spinal tumor on August 11 and August 20, 1980.

It was on August 25, 1980, while plaintiff was hospitalized at Metropolitan, that he served a notice of claim upon the comptroller and the Health and Hospitals Corporation asserting a claim for medical malpractice founded upon the failure of Coney Island Hospital to properly treat and diagnose his condition. Plaintiff made no application for leave to serve a late notice (see General Municipal Law, § 50-e, subd 5). Plaintiff remained an inpatient at Metropolitan for six and one-half weeks. Thereafter, Metropolitan referred him to Kings County Hospital, another municipal health facility, where plaintiff underwent radiation therapy and where he was hospitalized for the removal of bladder calculi in February, 1981.

On or about July 2, 1981, plaintiff moved, *inter alia,* to supplement his original notice of claim *nunc pro tunc* so as to include claims against Metropolitan Hospital and Kings County Hospital and two individual defendants. In support, plaintiff asserted that he left the care of Metropolitan Hospital suffering from "incontinence" which condition resulted from the medical and surgical malpractice of Dr. Kasy and other physicians on the staffs of Metropolitan and Kings County Hospitals.

Denying, without prejudice to renew, that branch of plaintiff's motion which sought permission to supplement his original notice of claim, Justice ARONIN at Special Term wrote in pertinent part: "The plaintiff has submitted no factual information from which the court could conclude

that service of the original notice of claim was timely. If the timeliness of the original notice of claim rests on a 'continuous treatment' formula, supporting facts must be presented (*Fonda v Paulsen,* 46 AD2d 540; see also McKinney's CPLR, Practice Commentary and Supplemental Practice Commentaries to CPLR 214-a by Joseph McLaughlin 1975, 1979)."

Plaintiff's subsequent motion to supplement his notice of claim *nunc pro tunc* to include allegations arising from his care, treatment and confinement at Metropolitan and Kings County Hospitals was granted, without memorandum, by order of Special Term (SHAW, J.), dated February 8, 1982 and the municipal defendants appeal.

As a general rule, an action for medical malpractice accrues on the date when the act, omission or failure complained of occurs (CPLR 214-a; see discussion in Siegel, NY Practice, § 42). Two exceptions, initially delineated by our Court of Appeals and subsequently codified by the Legislature, serve to temper the harshness of this rule, namely (1) where there is "continuous treatment" (CPLR 214-a; *Borgia v City of New York,* 12 NY2d 151, *supra*), and (2) where the malpractice consists of the defendant's leaving a "foreign object" in the body (CPLR 214-a; *Flanagan v Mount Eden Gen. Hosp.,* 24 NY2d 427; see discussion in *Barrella v Richmond Mem. Hosp.,* 88 AD2d 379, 382-383; McLaughlin, Practice Commentary and Supplementary Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 214-a, pp 168-175, 1982-1983 Pocket Part). Such exceptions also apply to the timeliness of service of a notice of claim, a condition precedent to the commencement of an action against a municipal hospital under the jurisdiction of the Health and Hospitals Corporation (see *Borgia v City of New York, supra,* p 155; see, also, *Davis v City of New York,* 38 NY2d 257; *Cotto v City of New York,* 99 AD2d 748).

By his brief, plaintiff seeks to persuade this court that because Coney Island Hospital, Metropolitan Hospital and Kings County Hospital are all facilities under the aegis of the Health and Hospitals Corporation, they are to be regarded as a single entity for the purposes of litigation, and accordingly, treatment rendered by one such institu-

tion (Metropolitan) for a condition which another (Coney Island) failed to diagnose and treat, constitutes sufficient basis for the invocation of the doctrine of continuous treatment. Opposing this view, the municipal defendants assert that the State Legislature, in creating the Health and Hospitals Corporation, clearly indicated an intent that each facility herein remain separate, apart and distinct. Thus the municipal defendants contend application of the doctrine would constitute error even were the treatment rendered among various municipal facilities for the same condition or complaint because such institutions must be considered separate entities for the purpose of the evaluation of claims. In other words, they allege treatment at different public institutions can never constitute a sufficient basis to trigger the doctrine.

In actions brought against the United States under the Federal Tort Claims Act (US Code, tit 28, § 2671 *et seq.*) the courts, applying Federal law, have generally rejected finding a toll of the Tort Claims Act limitations provision by virtue of the continuous treatment doctrine. The Federal courts "typically assume its existence and find it inapplicable on the facts" (*Kelly v United States,* 554 F Supp 1001, 1003; see, also, *Dundon v United States,* 559 F Supp 469, 472). For example, in *Dundon (supra)*, decedent, a veteran, had received treatment by different government physicians at various Veterans Administration hospitals for psychiatric and neurological problems. District Judge BRAMWELL held that the Federal Tort Claims Act limitations provision was not tolled under such facts by the continuous treatment doctrine (the court did, however, find a toll on the alternative basis that decedent's comatose state rendered him unable to comprehend the nature and cause of his injuries), observing "[t]he contention that it is sufficient that the decedent continued to receive treatment at facilities owned and operated by the government and was continuously treated by government physicians has been consistently rejected by the courts where a patient receives improper care from one government physician and is thereafter treated by others not accused of *that* malpractice. See e.g., *Camire v. United States,* 535 F.2d 749, 750 (2d Cir. 1976); *DeGirolamo v. United States,* 518 F Supp.

778, 781 (E.D.N.Y. 1981)" (*Dundon v United States,* 559 F Supp 469, 473, *supra;* emphasis supplied).

However, in interpreting the law of this State, this court is not constrained by such decisions, and in my opinion, in creating the Health and Hospitals Corporation, the State Legislature did not evince an intent to bar the toll afforded by the continuous treatment doctrine where the record evidences sufficient facts for its application. Significantly, our lawmakers wrote:

"There are serious shortages in the number of personnel adequately trained and qualified to provide the quality care and treatment needed. A myriad of complex and often deleterious constraints and restrictions place a harmful burden on the delivery of such care and treatment. Technological advances have been such that portions of the health and medical services now delivered by the city are not as advanced as they should be. A system permitting legal, financial and managerial *flexibility* is required for the provision and delivery of high quality, dignified and comprehensive care and treatment for the ill and infirm, particularly to those who can least afford such services * * * The inadequacy and shortage of health facilities derives from such factors among others as the rapid technological changes and advances taking place in the medical field. These changes and advances have created the need for substantial structural and functional changes in existing facilities. Many of the health facilities of the city are overcrowded. Buildings are deteriorating and many suffer harm as a result of piecemeal and uncoordinated additions * * * Procedures inherent in the administration of health and medical services as heretofore established obstruct and impair efficient operation of health and medical resources.

"It is found, declared and determined that in order to accomplish the purposes herein recited, to provide the needed health and medical services and health facilities, a public benefit corporation, to be known as the New York City health and hospital[s] corporation, should be created to provide such health and medical services and health facilities and to otherwise carry out such purposes" (New York City Health and Hospitals Corporation Act, § 2 [L 1969, ch 1016, § 1; emphasis supplied]).

Implicit in such declaration of policy and statement of purposes is the intent to create an umbrella health and hospitals corporation to facilitate the development of optimum efficiency and holistic health care by establishing flexibility of operation among the various municipal health facilities under its jurisdiction. Indeed, there exists a similar close nexus between certain municipal hospitals maintained and operated by the Health and Hospitals Corporation and certain privately owned and operated hospitals (see, e.g., *Cotto v City of New York, supra*). It would, for example, be anomalistic, contrary to underlying legislative precepts and against the foundation upon which the continuous treatment doctrine rests to require, by virtue of the "single entity" concept, that a patient, who is transferred or referred from one municipal hospital to another because the latter facility is possessed of sophisticated medical equipment capable of special and expensive procedures such as computerized axial tomography, interrupt the investigative and therapeutic efforts made on his behalf to serve a notice of claim where such efforts are for the same or a related condition.

While it is generally true that what constitutes continuous treatment is a question to be resolved by the trier of fact (see *McDermott v Torre,* 56 NY2d 399; *Richardson v Orentreich,* 97 AD2d 9), on this record no trier of fact could properly conclude that the treatments received by plaintiff at Metropolitan Hospital were continuous to those received at Coney Island Hospital. This is because plaintiff, by his own testimony at the comptroller's hearing and by his own acts, clearly evidenced an intent not to return to Coney Island Hospital for treatment after his visit on March 29, 1980. Such intent, to eschew the care afforded by that municipal health facility, was published by plaintiff's admitted consultation with various private ("outside") physicians. His mere registration at the Coney Island emergency room, without prior appointment and without thereafter waiting to see a physician, cannot serve to revive his claim and bolster his assertion of continuity of treatment. This is particularly evident in view of the fact that (1) on the occasion of his July 7, 1980 registration at the Coney Island emergency room, plaintiff was repeatedly called by

emergency room personnel to see the duty physician, namely, at 8:29 A.M., 9:26 A.M. and 10:04 A.M., each time there being no response, and (2) on August 4, 1980, plaintiff registered with emergency admitting at 4:42 P.M., and by 4:48 P.M., he had "walked out" of the facility. Thus it is clear from the record that both plaintiff and Coney Island Hospital considered plaintiff's treatment to have been completed. Additionally, despite Special Term's specific request that plaintiff, upon his subsequent motion to supplement his notice of claim *nunc pro tunc,* set forth supporting factual information indicative of continuous treatment, his papers failed to allege any facts consistent therewith, for example: (a) that plaintiff was referred by Coney Island Hospital to Metropolitan Hospital (see *Cotto v City of New York,* 99 AD2d 748, *supra*), (b) that on July 7 and/or August 4, 1980, plaintiff was in fact treated by a physician at the emergency room of Coney Island Hospital, or (c) that there were other contacts sufficient to raise an issue of fact as to the continuing nature of the medical services rendered plaintiff by Coney Island Hospital.

Accordingly, for these reasons it must be concluded that in this case the doctrine of continuous treatment may not be invoked to toll the running of the statutory claim period (*Davis v City of New York,* 38 NY2d 257, *supra;* see *Barrella v Richmond Mem. Hosp.,* 88 AD2d 379, *supra;* cf. *Richardson v Orentreich,* 97 AD2d 9, *supra*).

WEINSTEIN, J. (concurring). While I have no quarrel with the result reached by the majority, I have chosen to present my views in a separate opinion in order to avoid the possibility of confusing my own views on the nature of the New York City Health and Hospitals Corporation with those of my colleagues.

The issue presented for resolution on this appeal is whether plaintiff was properly permitted to file a supplemental notice of claim *nunc pro tunc* to include allegations of medical malpractice arising from his care, treatment and confinement at two hospitals not mentioned in his original claim. Under the circumstances of this case, I conclude that he was not.

On July 11, 1979, plaintiff was treated at the emergency room of Coney Island Hospital for injuries which he had

sustained in a motor vehicle accident. Plaintiff had been injured when the motorcycle on which he was a passenger was hit by a car. He entered the emergency room complaining of pain in his "whole left side". Plaintiff received sutures on his right cheek below the right eye and was sent to the X-ray department. He was subsequently released without being admitted to the hospital and given a prescription for pain killers with instructions to return to the hospital if the pain persisted. Plaintiff returned to the emergency room for the removal of his sutures on July 18, 1979.

After his accident, plaintiff complained of pain in the lower back and sacral area and was referred from the emergency room to the physical therapy unit of Coney Island Hospital. Hospital records reveal that he subsequently received seven diathermy treatments. During the course of the year following his accident, plaintiff returned to Coney Island Hospital on several other occasions complaining of pains on the left side of his body. His last three recorded visits to that hospital were on March 29, 1980, July 7, 1980 and August 4, 1980. In the interim, plaintiff had consulted several private physicians, including a urologist and a neurologist.

At some point after his accident, plaintiff began to complain of difficulties regarding his urinary and excretory functions. Although he mentioned this problem to his mother and to his private physicians, he never mentioned it to anyone at Coney Island Hospital since he was no longer undergoing treatment there at the time he became aware of his condition. In August, 1980, plaintiff was referred by Dr. Zuckerman, a neurologist whom he had consulted, to Dr. Kasy of Metropolitan Hospital. The latter had him admitted to Metropolitan Hospital where he was found to be suffering paralysis. Plaintiff underwent surgery at Metropolitan Hospital on August 11 and 20, 1980 for the removal of a spinal tumor. He was hospitalized at that facility for six and one-half weeks.

On August 25, 1980, plaintiff, while hospitalized at Metropolitan Hospital, caused a notice of claim to be served upon the New York City Health and Hospitals Corporation relating to Coney Island Hospital's failure to

promptly diagnose the spinal tumor located at the lower base of his spine.

Upon his release from Metropolitan Hospital, plaintiff was referred to Kings County Hospital where he received radiation treatment for the spinal tumor for a period of two and one-half to three months. In February, 1981, he underwent a procedure for removal of bladder stones at Kings County Hospital and remained hospitalized there for 13 days.

After his spinal surgery, plaintiff began to complain of incontinency of urine. A statutory city comptroller's hearing was conducted on March 30, 1981 with respect to the Coney Island Hospital claim. At that time, plaintiff was compelled to wear a diaper due to this condition. He was, at that time, going back to Kings County Hospital for treatment on a monthly basis.

On or about July 2, 1981, plaintiff moved, *inter alia,* to supplement *nunc pro tunc* the original notice of claim as related to defendant Coney Island Hospital so as to include Metropolitan and Kings County Hospitals. In support thereof, plaintiff alleged that the urine incontinency, which first manifested itself during the period of his postoperative care at Metropolitan Hospital, resulted from acts of surgical and medical malpractice on the parts of Dr. Kasy and other physicians at Metropolitan and Kings County Hospitals. By order dated October 23, 1981, the court (ARONIN, J.), denied, without prejudice to renew, that branch of plaintiff's motion which sought permission to supplement the original notice of claim *nunc pro tunc.* The court based its decision upon the following reasoning, as set forth in its memorandum of August 27, 1981:

"A notice of claim against a municipality must be filed 'within 90 days after the claim arose' (General Municipal Law, § 50-e, subd 1). The respondents contend that the plaintiff's original notice of claim was untimely. If they are correct, then supplementation of the original notice would have to be denied. A cause of action accrues on the date of the alleged negligence or malpractice. Here, the date appears to be July 11, 1979 and the notice of claim was served on August 25, 1980.

"The plaintiff has submitted no factual information from which the court could conclude that service of the original notice of claim was timely. If the timeliness of the original notice of claim rests on a 'continuous treatment' formula, supporting facts must be presented (*Fonda v Paulsen,* 46 AD2d 540; see also McKinney's CPLR, Practice Commentary and Supplementary Practice Commentaries to CPLR 214-a by Joseph McLaughlin 1975, 1979).

"In addition, if plaintiff seeks leave to file a delayed notice of claim *nunc pro tunc* with respect to the care and treatment rendered by Metropolitan Hospital and Kings County Hospital pursuant to General Municipal Law 50 (e) (5), he is required to set forth various pertinent facts including whether 'the public corporation or its attorney or its insurance carrier acquired actual knowledge of the essential facts constituting the claim within the time specified in subdivision one or within a reasonable time thereafter'."

Plaintiff's subsequent motion to supplement his notice of claim *nunc pro tunc* was granted without opinion by order of Special Term (SHAW, J.), dated February 8, 1982. The appeal is from this order. It has been taken solely on behalf of the municipal defendants. Defendants Kasy and Reddy are not parties to this appeal in their individual capacities. While the city is obligated to defend and indemnify employees of the New York City Health and Hospitals Corporation upon such employees' timely notification to the city of the charges pending against them (General Municipal Law, § 50-k, subds 2-4 [L 1979, ch 673; § 9]), there is no evidence on record that defendant doctors have chosen to avail themselves of this statutory right.

The initial inquiry should focus upon the timeliness of the notice of claim served upon defendant Coney Island Hospital on August 25, 1980, inasmuch as a notice which is untimely in its inception may not later be supplemented *nunc pro tunc.*

It bears noting at the outset that the New York City Health and Hospitals Corporation is a public benefit corporation independent of the City of New York (*Brennan v City of New York,* 59 NY2d 791; New York City Health and Hospitals Corporation Act, § 4 [L 1969, ch 1016, § 1]). In

my view, this implies that service of a notice of claim upon the New York City Health and Hospitals Corporation or any of its branches does not automatically make the city a part of the action. I strongly disagree with any implication that all medical facilities under the aegis of the New York City Health and Hospitals Corporation are to be regarded as a single entity for purposes of litigation. I am more inclined, rather, to subscribe to the municipal defendants' proposition that the Legislature intended that each facility comprising the municipal corporation remain a separate and distinct entity, at least for purposes of service. This in no way implies, however, that treatment at two or more municipal institutions can never provide an appropriate scenario for the invocation of the continuous treatment doctrine. The 90-day notice of claim period would be tolled, for instance, if the facts established the existence of a close nexus between the successive hospitals such that the sequence of medical treatments administered to plaintiff at the respective institutions constituted a single continuous course of treatment (see *Cotto v City of New York,* 99 AD2d 748). Thus, unless the sequence of medical treatment which plaintiff received at these three municipal hospitals can be considered a single continuous course of treatment, each of the defendant hospitals should be considered a separate entity with the result that service of a notice of claim upon one will not be tantamount to service upon the others.

Section 50-e (subd 1, par [a]) of the General Municipal Law requires as a condition precedent to the commencement of an action against a public corporation, any officer, appointee or employee thereof, that the plaintiff serve a notice of claim within 90 days after the claim arises. At bar, plaintiff's claim originally accrued on July 11, 1979, when he was treated at Coney Island Hospital for injuries sustained in a motor vehicle accident.

The Court of Appeals has held in *Borgia v City of New York* (12 NY2d 151), that the "continuous treatment" rule could postpone the commencement of suit until years after the alleged acts of malpractice. The court defined "continuous treatment" as "treatment for the same or related illnesses or injuries, continuing after the alleged acts of malpractice, not mere continuity of a general physician-patient relationship" (*supra,* p 157). It has further been

held that: "continuous treatment does not contemplate circumstances where a patient initiates return visits merely to have his or her condition checked * * * The Statute of Limitations may begin to run 'once a hospital or physician considers the patient's treatment to be completed and does not request the patient to return for further examination' * * * This is not to say, however, that a complete discharge by a physician forever bars a finding of continuing treatment. Included within the scope of 'continuous treatment' is a timely return visit instigated by the patient to complain about and seek treatment for a matter related to the initial treatment. Thus, there will be continuing treatment when a patient, instructed that he or she does not need further attention, soon returns to the doctor because of continued pain in that area for which medical attention was first sought" (*McDermott v Torre,* 56 NY2d 399, 405-406).

The mere existence of a time interval between a plaintiff's contacts with a defendant hospital or physician does not per se preclude a finding that the plaintiff's treatment was continuous (see *Fonda v Paulsen,* 46 AD2d 540). Where a patient continues under postoperative observation by his physician and is advised that his condition is being cured, this is as much "treatment" as are affirmative acts such as surgery, therapy, or the prescription of medicine (*Fonda v Paulsen, supra,* p 543).

Where the continuous treatment rule is invoked, the doctrine serves as a toll, such that the patient will not be compelled to initiate judicial proceedings so long as the physician continues to treat the injury (*McDermott v Torre,* 56 NY2d 399, 407, *supra*).

The continuous treatment exception is premised upon the doctrinal assumption that a patient who has placed his trust and confidence in a hospital's medical staff and is hence in no position to question his physician's techniques, has a right to rely upon the doctor's professional skill without the necessity of interrupting a continuous course of treatment by instituting suit. The exception thus provides the patient with an opportunity to seek corrective treatment from the doctor as well as affording the physician a reasonable chance to identify and correct errors

made at a prior stage of treatment (*Barrella v Richmond Mem. Hosp.,* 88 AD2d 379, 383).

In order to come within the continuous treatment exception, the plaintiff in the instant case must prove that his sporadic appearances at Coney Island Hospital subsequent to his discharge can be characterized as constituting medical treatment which includes the wrongful acts or omissions related to his original condition or complaint (*Charalambakis v City of New York,* 46 NY2d 785).

After being treated for the injuries sustained in the July, 1979 motor vehicle accident, plaintiff made several widely scattered appearances at Coney Island Hospital with diffuse complaints. He complained on October 1, 1979 of lower back pain and on November 9, 1979 of pain and swelling of the left ear lobe. On March 29, 1980, plaintiff was diagnosed as suffering from low back pain. His last recorded visits to the emergency room of Coney Island Hospital were on July 7, 1980 and August 4, 1980. Hospital records reveal that although plaintiff was called for treatment at three separate times on July 7, 1980, a recording of "no answer" was made on each occasion. The notation for August 4, 1980 is that "patient walked out".

It is apparent from the record that plaintiff did not subject himself to treatment on either of the latter two dates. He was not seen by a physician on either date. The mere act of registering at the desk of an emergency room and having one's vital signs recorded cannot be characterized as constituting medical services (see *Davis v City of New York,* 38 NY2d 257, 260). Plaintiff's last recorded treatment at Coney Island Hospital occurred on March 29, 1980. Thus, he received no medical treatment within 90 days of service of his notice of claim. By plaintiff's own admission, he was no longer being treated at Coney Island Hospital when the problem leading to the discovery of his spinal tumor was noted. Nor was the running of the 90-day notice of claim period tolled as a result of the treatment subsequently received by plaintiff at Metropolitan or Kings County Hospitals. There was no close nexus between Coney Island and Metropolitan Hospitals which could have established that the sequence of medical treatments ad-

ministered to plaintiff at the respective institutions constituted a single continuous course of treatment. Unlike the situation in *Cotto v City of New York* (99 AD2d 748, *supra*), there was no direct referral of plaintiff to the subsequent hospitals by the first hospital where he received treatment for the underlying ailment. Plaintiff was referred to Metropolitan Hospital by his private physician. Nor was there any evidence at bar of a formal agreement between the defendant hospitals which effectively put one in a supervisory capacity vis-à-vis the others (cf. *Cotto v City of New York, supra*). On these facts, it is reasonable to infer that plaintiff considered his treatment at Coney Island Hospital to have been completed at the time of his referral to Metropolitan Hospital. Defendant Coney Island Hospital had no continuing responsibility for the medical treatment subsequently received by plaintiff at Metropolitan and Kings County Hospitals. *McDermott v Torre* (56 NY2d 399, 405, *supra*), is consistent with the proposition that single discrete acts performed by an independent physician or hospital may be complete standing alone.

Accordingly, the notice of claim served on August 25, 1980 was untimely as against defendant Coney Island Hospital. To hold otherwise would constitute an unwarranted extension of the doctrine enunciated in *Borgia v City of New York* (12 NY2d 151, *supra*). Thus, although defendant Coney Island Hospital may well have been responsible for failing to timely diagnose the seriousness of plaintiff's condition, the action against it must be dismissed in view of plaintiff's failure to have timely served a notice of claim. Inasmuch as plaintiff's notice of claim was untimely, it may not be supplemented in the manner now sought.

The law is clear that courts have discretion to permit a plaintiff to serve a late notice of claim *nunc pro tunc* provided that the term of the extension does not exceed the one year and 90-day limitation set forth for the commencement of such actions (General Municipal Law, §§ 50-i, 50-e, subd 5; *Pierson v City of New York,* 56 NY2d 950; *Moore v City of New York,* 84 AD2d 526, affd 56 NY2d 950; *Cintron v City of New York,* 82 AD2d 796; *Walcott v Village of Cazenovia,* 91 Misc 2d 437, affd 65 AD2d 671). The statutory period for commencing an action against defendant

Coney Island Hospital expired in June, 1981, one year and 90 days from the date of plaintiff's last recorded treatment there on March 29, 1980. No application to serve a late notice of claim was made by plaintiff within that time period. Notwithstanding the fact that defendants Metropolitan and Kings County Hospitals had actual knowledge, via plaintiff's motion to supplement his notice of claim *nunc pro tunc,* of the essential facts constituting the malpractice claims against them (see *Matter of Newson v City of New York,* 87 AD2d 630), no application for late service relief pursuant to section 50-e (subd 1, par [a]) of the General Municipal Law was ever made. In view of this fatal omission, an action against these defendants is time barred (see *Silbernagel v City of New York,* 57 NY2d 691, revg 85 AD2d 586). Accordingly, plaintiff's application to supplement his notice of claim should have been denied. Inasmuch as plaintiff has failed to comply with a condition precedent to the commencement of an action against the municipal defendants (General Municipal Law, § 50-e, subd 1, par [a]), he no longer has a viable claim against them.

Titone, J. P., and Lazer, J., concur with Boyers, J.; Weinstein, J., concurs in a separate opinion.

Order of the Supreme Court, Kings County, dated February 8, 1982, reversed, on the law and the facts, without costs or disbursements, and application denied.