CARL OGLE, Respondent, v STATE OF NEW YORK, Appellant.

Third Department, November 17, 1988

**APPEARANCES OF COUNSEL**

*Robert Abrams, Attorney-General (Leslie B. Neustadt* and *Peter J. Dooley* of counsel), for appellant.

*Lee S. Michaels, P. C. (John V. Bell* of counsel), for respondent.

OPINION OF THE COURT

MERCURE, J.

On August 24, 1987, claimant filed a claim for medical malpractice and negligence against the State. The notice of claim indicated that the negligence and malpractice occurred from mid-November 1986 until early March 1987, primarily at Ogdensburg Correctional Facility (hereinafter Ogdensburg) in St. Lawrence County while claimant was an inmate. Specifically, claimant alleges that the State failed to administer follow-up tests for tuberculosis and failed to prescribe antituberculin drugs and that, by reason of the State's delay in providing proper medical care, the disease invaded claimant's spinal cord, rendering him a paraplegic. Claimant asserts that he was ultimately transferred to Upstate Medical Center (hereinafter Upstate) in Onondaga County after first being referred to Good Samaritan Hospital (hereinafter Samaritan) in Jefferson County. During his hospitalization at Upstate, claimant was advised that he had an advanced tubercular lesion of the spine. Following surgery and a period of rehabilitation, he was discharged from Upstate on July 17, 1987 and transferred to Green Haven Correctional Facility in Dutchess County after briefly returning to Ogdensburg.

The Court of Claims denied the State's motion to dismiss the notice of claim as untimely, holding that the continuous treatment doctrine tolled the notice of claim provisions until claimant was released from Upstate. Relying on *Kelly v State of New York* (110 AD2d 1062), the court held that "where all of the treating medical personnel are employed by one defendant, as was the case here, the acts of the several employees are taken together as one continuous course of treatment" and, further, that the medical treatment at Upstate should be imputed to the physicians at Ogdensburg. The Court of Claims determined that the notice of claim was timely and, accordingly, denied claimant's motion to file a late claim as unnecessary.* This appeal by the State ensued.

As a general rule, an action for medical malpractice accrues on the date when the alleged act or omission occurs even though it may not be discovered until after the Statute of Limitations has run *(see,* CPLR 214-a; *Bleiler v Bodnar,* 65

---

* Clearly, the Court of Claims has discretion to permit claimant to file a late notice of claim where, as here, the 2½-year Statute of Limitations has not run *(see,* Court of Claims Act § 10 [6]; *Howard v State of New York,* 96 AD2d 656).

NY2d 65). An exception where there is continuous treatment, initially delineated by the Court of Appeals in *Borgia v City of New York* (12 NY2d 151) and now codified in CPLR 214-a, serves to temper the harshness of the rule. The exception also applies to and may toll the 90-day filing requirement for a notice of claim found in Court of Claims Act § 10 (3) *(Davis v City of New York,* 38 NY2d 257; *Borgia v City of New York, supra; Marabello v City of New York,* 99 AD2d 133, *appeal dismissed* 62 NY2d 942).

Turning to the instant case, we first examine *Howard v State of New York* (96 AD2d 656) and *Kelly v State of New York* (110 AD2d 1062, *supra),* relied upon by the State and claimant, respectively. In *Howard,* this court refused to apply the continuous treatment doctrine even though an inmate was transferred to several different prison facilities and all physicians were employed by the State, reasoning that there was no continuous treatment "because, after [he left Clinton Correctional Facility], claimant was no longer being treated by the doctors who had treated him in Clinton * * * where the alleged malpractice occurred" *(Howard v State of New York, supra,* at 657). In *Kelly,* the Fourth Department applied the continuous treatment doctrine to medical care provided in three different prison facilities on the basis that all of the physicians were employed by the State. Claimant's reliance upon *Kelly* is misplaced, however, since to the extent that *Kelly* is in conflict with *Howard,* we decline to follow it. In our view, the continuous treatment doctrine should not be applied simply on the basis that all of the providers of medical care were employed by the State *(see, De Sainz v City of New York,* 101 AD2d 746; *see also, Ruane v Niagara Falls Mem. Med. Center,* 60 NY2d 908).

However, we also disagree with the State's conclusion that *Howard (supra)* requires rejection of the continuous treatment doctrine in the instant case as a matter of law. In *Howard,* the inmate was transferred for administrative rather than medical purposes. Here, claimant was not transferred, but instead hospitalized for the purpose of continuing his medical treatment, and when the treatment was concluded, returned to Ogdensburg. Nevertheless, there must be some relevant relationship between the allegedly negligent physician and the subsequent treating physician before the subsequent treatment is imputed to the initial physician for tolling purposes *(see, Meath v Mishrick,* 120 AD2d 327, *affd* 68 NY2d 992; *Evra v Hillcrest Gen. Hosp.,* 111 AD2d 740). The fact that Samari-

tan is a private institution is not dispositive of whether there was a relevant relationship involving Upstate, Samaritan and Ogdensburg *(see, Cotto v City of New York,* 99 AD2d 748), especially since claimant could not be hospitalized without authorization from appropriate officials at Ogdensburg.

Thus, we conclude that the Court of Claims erred in determining that the continuous treatment doctrine applies in the instant case as a matter of law. Instead, we believe there are questions of fact which should be determined by the Court of Claims after hearing the relevant evidence *(see, McDermott v Torre,* 56 NY2d 399; *Watkins v Fromm,* 108 AD2d 233; *Richardson v Orentreich,* 97 AD2d 9, *affd* 64 NY2d 896). The Court of Claims must determine whether the treatment received at Upstate was performed by health care workers who were in "relevant association with the [initial treating] physician" *(McDermott v Torre, supra,* at 408), or whether there was a continuing relationship between claimant and the physicians at Ogdensburg during the time claimant was treated at Samaritan and Upstate *(see, Evra v Hillcrest Gen. Hosp.,* 111 AD2d 740, *supra)* so as to form a sufficient basis for application of the continuous treatment doctrine *(see, Marabello v City of New York,* 99 AD2d 133, *supra; see also, Kelly v State of New York, supra,* at 1063 [Hancock, Jr., J., dissenting]).

MAHONEY, P. J., KANE, YESAWICH, JR., and HARVEY, JJ., concur.

Order reversed, on the law, without ˈcosts, and matter remitted to the Court of Claims for further proceedings not inconsistent with this court's decision.