Vodovoz v Coney Is. Hosp. (2025 NY Slip Op 51561(U))

[*1]

Vodovoz v Coney Is. Hosp.

2025 NY Slip Op 51561(U)

Decided on October 2, 2025

Supreme Court, Kings County

Mallafre Melendez, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on October 2, 2025
Supreme Court, Kings County

Yuri Vodovoz, as Administrator of the Estate of Victoria Moonblit-Vodovoz, Plaintiff,

against
Coney Island Hospital, The New York City Health and Hospitals Corporation, Matthew J. David, Andrew Rizzo, Defendants.

Index No. 526039/2018

Plaintiff
Brian J. Isaac, Esq. (bji@ppid.com)
Pollack Pollack Isaac & Decicco
250 Broadway, Suite 600
New York, NY 10007
212-233-8100
Defendants
Andrew J. Pinon, Esq. (andrew.pinon@wilsonelser.com)
Wilson Elser Moskowitz Edelman & Dicker LLP
150 E 42nd St
New York, NY 10017
212-915-5322

Consuelo Mallafre Melendez, J.

Recitation, as required by CPLR §2219 [a], of the papers considered in the review:
NYSCEF #s: Seq. 1 (reference): 32 — 33, 34, 36 — 42, 49 — 52
Seq. 2: 35 — 36, 37 — 42, 49 — 52, 53
Seq. 3: 64 — 73, 74, 75
Plaintiff moves (Seq. No. 3) for an Order, pursuant to CPLR 2221 (d) or (e), granting leave to reargue or renew this Court's prior decision and order dated June 6, 2025, and upon reargument/renewal, denying Defendants' cross motion (Seq. No. 2) to dismiss this action. Defendants oppose the motion.
In the prior decision, this Court considered Plaintiff's motion (Seq. No. 1) to substitute "Yuri Vodovoz, as Administrator of the Estate of Victoria Moonblit-Vodovoz" for the deceased [*2]Plaintiff in the caption and lift the stay in this action, pursuant to CPLR 1021. The Court also considered Defendants' cross motion (Seq. No. 2) to dismiss the action on the grounds that Plaintiff failed to timely substitute an administrator of the estate, or in the alternative, on the grounds that Plaintiff failed to timely file a notice of claim within 90 days pursuant to CPLR 3211 (a) and Gen. Mun. Law § 50-e.
By Order dated June 6, 2025, the Court granted Plaintiff's motion to substitute the administrator of the decedent's estate, denied the part of Defendants' cross motion to dismiss for failure to timely substitute, and lifted the stay in this action. Having lifted the stay, the Court granted the part of Defendants' motion seeking to dismiss for failure to timely serve a notice of claim.
Now, Plaintiff moves to renew or reargue the part of the decision which granted Defendants' cross motion based on their failure to timely file a notice of claim.
CPLR 2221 (d) provides that when a party moves to reargue a prior motion, the reargument shall be "based upon matters of fact or law allegedly overlooked or misapprehended by the court in determining the prior motion." "While the determination to grant leave to reargue a motion lies within the sound discretion of the court, a motion for leave to reargue is not designed to provide an unsuccessful party with successive opportunities to reargue issues previously decided, or to present arguments different from those originally presented" (Matter of Anthony J. Carter, DDS, P.C. v Carter, 81 AD3d 819, 820 [2d Dept 2011]).
In the alternative, CPLR 2221 (e) allows a party to renew a prior motion based upon a change in the law, or "based upon new facts not offered on the prior motion that would change the prior determination." The motion must also "contain reasonable justification for the failure to present such facts on the prior motion" (CPLR 2221 [e] [3]). Renewal is improper where the moving party merely restates arguments and facts which were previously available, without offering "any new facts or a valid explanation" for not making that factual showing at the time of the original motion (Jacobs v Sabo, 17 AD3d 321 [2d Dept 2005]; see also Ciceron v Gulmatico, 220 AD3d 736, 739 [2d Dept 2023]; Tollinchi v Jamaica Hosp. Med. Ctr., 216 AD3d 842, 845 [2d Dept 2023]).
Here, Plaintiff argues that the Court did not fully address their argument in opposition to Defendants' cross motion that the "continuous treatment" doctrine rendered their December 2018 notice of claim timely. Specifically, they state that the Court failed to consider the document labeled "Physician's Affirmation of Merit," dated and filed on May 16, 2025, which they state "establishes as a matter of fact that plaintiff was under the continuous treatment of the New York City Health and Hospitals Corporation . . . until her demise on November 17, 2019."
With respect to CPLR 2221 (e), Plaintiff has not submitted any new facts or evidence, only refiled the prior motion and cross motion papers and exhibits. However, Plaintiff's counsel refers to the following "new" facts and exhibits in support of renewal of the prior motion: "a detailed Physician Affirmation, dated April 18, 2025, establishing continuous treatment and clear departures from the standard of care"; "the original Notice of Claim served prior to plaintiff's death"; and "documentary evidence of persistent efforts to prosecute the case, contrary to defendants' claims of abandonment." Despite this reference to a physician's affirmation dated April 18, 2025, the only physician's affirmation they include and cite in the renew/reargue papers is the same affirmation dated "May 16, 2025," which was filed in opposition to the prior motion.
All the documents submitted, including the redacted physician's affirmation and original notice of claim, were previously included in the prior motion papers. Thus, Plaintiff has not made the required showing of "new facts not offered on the prior motion" to warrant renewal [*3]under CPLR 2221 (e). This portion of the motion is denied.
As to reargument under CPLR 2221 (d), the Court's prior decision briefly addressed and rejected the continuous treatment argument, which was raised by Plaintiff in opposition to the cross motion. The Court found Plaintiff presented no evidentiary support for this argument, only a "vague and conclusory statement in the attorney affirmation" that Plaintiff received treatment at another NYCHHC facility (Gouverneur Hospital) until her death. In the instant motion to reargue, Plaintiff argues that they submitted a physician's affirmation of merit which provided support for the continuous treatment issue, and the Court "overlooked the affidavit of plaintiff's medical expert" or "failed to review plaintiff's unrebutted expert affidavit which demonstrates that plaintiff was under the continuous care and treatment of the Health and Hospitals Corporation."
Upon review, the Court agrees that the physician's affirmation and its potential relevance to the continuous treatment argument was not addressed in its decision on June 6, 2025. The decision should have contained a more complete consideration and discussion of the affirmation. Therefore, the part of Plaintiff's motion seeking reargument based on "matters of fact . . . allegedly overlooked or misapprehended by the court" is granted and the decision and order dated June 6, 2025 is hereby vacated and superseded as follows:
Plaintiff moves (Seq. No. 1) for an Order, pursuant to CPLR 1015 (a) and CPLR 1021, to substitute "Yuri Vodovoz, as Administrator of the Estate of Victoria Moonblit-Vodovoz" for the deceased Plaintiff in the caption and lift the stay in this action.
Defendants New York City Health and Hospitals Corporation ("NYCHHC"), sued herein as The New York City Health and Hospitals Corporation and Coney Island Hospital, Matthew J. David, and Andrew Rizzo, oppose Plaintiff's motion and cross move (Seq. No. 2) for an Order dismissing Plaintiff's complaint, pursuant to CPLR 1021, for failure to substitute an administrator within a reasonable time, and/or pursuant to CPLR 3211 and Gen. Mun. Law § 50-e, for failure to timely serve a notice of claim.
This is a medical malpractice action arising from treatment rendered on or about January 12 through January 22, 2018. Plaintiff alleges that the defendant health care providers failed to timely diagnose and treat a stroke when she presented to Coney Island Hospital.
Plaintiff served a notice of claim on NYCHHC on or about December 27, 2018. She filed a summons and complaint on April 11, 2019, asserting claims of medical malpractice against NYCHHC and two individual employees of NYCHHC/Coney Island Hospital. Defendants appeared by filing an Answer on June 13, 2019.
Subsequently, Plaintiff passed away on November 17, 2019. Yuri Vodovoz was issued letters of administration by Surrogate's Court on May 10, 2021. However, no motion to substitute a personal representative in this action and lift the stay was filed until March 20, 2025.
"Generally, the death of a party divests a court of jurisdiction to act, and automatically stays proceedings in the action pending the substitution of a personal representative for the decedent" (see 2911 Mgt., LLC v Davis, 235 AD3d 938, 938 [2d Dept 2025], quoting Neuman v Neumann, 85 AD3d 1138, 1139 [2d Dept 2011]).
CPLR 1021 provides that "[i]f the event requiring substitution occurs before final judgment and substitution is not made within a reasonable time, the action may be dismissed as to the party for whom substitution should have been made." The statute does not impose a strict time limit for what constitutes a "reasonable time," but courts making this determination may consider "several factors, including the diligence of the party seeking substitution, prejudice to the other parties, and whether the party to be substituted has shown that the action or the defense [*4]has merit" (Borruso v New York Methodist Hosp., 84 AD3d 1293, 1294 [2d Dept 2011]).
The instant motion (Seq. No. 1) to substitute Yuri Vodovoz as representative of the decedent's estate was filed on March 20, 2025, over five years after the action was stayed by Plaintiff's death. Plaintiff's counsel states in their affirmation that prior to filing the motion, they had reached out to Defendants' counsel seeking a stipulation and were given "reassurances that the stipulation should be forthcoming."
In their opposition and cross motion, Defendants argue that Plaintiff did not seek substitution within a reasonable time. They submit emails showing their communications with Plaintiff's counsel regarding a proposed stipulation began on or about November 16, 2023, over two years (30 months) after the decedent's administrator was appointed by Surrogate's Court. In an email dated December 15, 2023, Defendants' counsel advised Plaintiff and the Court that they needed authority from their client and would "advise counsel shortly whether the stay can be lifted via stipulation or will necessitate motion practice." Defendants ultimately advised Plaintiff's counsel they did not have the authority from their clients to sign the stipulation on January 22, 2024. (NYSCEF Doc. No. 37-38.)
On January 24, 2024, Plaintiff's counsel attempted to e-file a partially signed stipulation, and they were informed by the Part Clerk that the requested relief could not be granted without a motion: "The matter is stayed and the substitution has not taken place. The Judge does not have authority at this time without a motion asking for the requested relief." (NYSCEF Doc. No. 40.) In February 2025, one year later, Plaintiff's counsel again e-filed a letter to the Court asking for a conference to "resolve outstanding issues including caption change," and they were informed by chambers that a motion was required (NYSCEF Doc. No. 41).
Upon review of the history of this action, Plaintiff has not consistently exercised "diligence" in seeking substitution. Although a petition to appoint an administrator of the estate was filed and letters were issued by May 2021, nearly four years have passed since then and no motion was ever made to substitute the administrator and proceed with this action. Plaintiff demonstrated some attempts at reviving the action during that period, and they place responsibility on the opposing side for their unwillingness to stipulate to a caption change, particularly between November 2023 — January 2024. However, Plaintiff's counsel provides no explanation for the initial 30-month delay after the letters of administration were issued. There is also no explanation for the additional year that passed between their attempts to unilaterally amend the caption in January 2024 and filing this motion in March 2025.
Nevertheless, the Court notes that Plaintiff filed this motion to substitute prior to Defendants' cross motion to dismiss the action, an administrator of the estate has been duly appointed by Surrogate's Court, and there is strong public policy in favor of disposing matters on their merits (cf. Laroche v Laroche, 162 AD3d 1000, 1002 [2d Dept 2018]; see White v Diallo, 156 AD3d 664, 665 [2d Dept 2017]; Reed v Grossi, 59 AD3d 509, 511 [2d Dept 2009]). For these reasons, the Court is constrained to grant Plaintiff's motion to lift the stay, substitute the administrator of the decedent's estate, and amend the caption accordingly.
The stay having been lifted, the Court turns to the part of Defendants' cross motion (Seq. No. 2) to dismiss on the grounds that Plaintiff failed to timely serve a notice of claim.
A notice of claim served within 90 days after the claim arises is a condition precedent of all suits against NYCHHC (see Gen. Mun. Law § 50-e). The notice of claim requirement also applies to employees of NYCHHC named as individual defendants, and thus it applies to co-defendants Matthew J. David, D.O. and Andrew Rizzo, D.O., who are identified as such in Plaintiff's complaint and the joint answer filed by Defendants (Gen. Mun. Law § 50-k [6]).
An extension of the 90-day notice of claim period may be granted under Gen. Mun. Law § 50-e (5), but "the extension shall not exceed the time limited for the commencement of an action." Thus, the Court has no discretion to entertain an application for leave to serve a late notice of claim after the statute of limitations has expired.
Here, Plaintiff's 90-day notice of claim period ended on April 22, 2018, and an untimely notice of claim was filed on or about December 27, 2018. The NYSCEF file reflects that Plaintiff filed a Proposed Order to Show Cause seeking leave to serve a late notice of claim on the same date. However, this Order to Show Cause was defective and was never signed, served upon NYCHHC, or heard before the court.
An inquiry into the NYSCEF (e-filing) system shows that under "Document Comments," Plaintiff's counsel was directed to "submit a working copy to Part 72 for review, with confirmation notice attached." There is no indication that decedent/claimant or their counsel followed up with the court's directive, and no copy was received or processed by Part 72. Thus, contrary to Plaintiff's argument in response to the cross motion, an application was never "properly before the Court," and it was not "unopposed" by the Defendants. The Proposed Order to Show Cause was not signed or heard.
To this date, Plaintiff and/or her administrator have made no proper motion or petition to the Court for leave to serve a late notice of claim. As is discussed below and Defendants argue in their cross motion, the statute of limitations period has long since expired, and the court is without authority to permit the extension beyond that time under Gen. Mun. Law § 50-e (5).
For pain and suffering/personal injury claims sounding in medical malpractice, the statute of limitations is one year and ninety days (Gen. Mun. Law § 50-i). Based on the alleged dates of treatment in January 2018, the statute of limitations period expired on April 22, 2019, and Plaintiff failed to make a proper application to the Court for leave to serve a late notice of claim before that date.
Plaintiff argues in opposition that the "continuous treatment" doctrine applied from the alleged date of malpractice until her date of death, and therefore the notice of claim dated December 27, 2018 was timely.
Plaintiff's underlying claim involves failure to timely diagnose and treat a stroke when Decedent presented to Coney Island Hospital on January 12, 2018, and the pleadings consistently refer to her treatment which "continued up through and including January 22, 2018." In the notice of claim signed by Decedent on December 24, 2018, the dates of treatment are set forth as "on or about January 12, 2018 during the admission of Claimant here in Coney Island Hospital continuing through at the present treatment at Coney Island Hospital thereafter, up to and including January 22, 2018."
Generally, the limitations period for a medical malpractice claim begins to run from the alleged act or omission, or the last date of treatment "where there is continuous treatment for the same illness, injury or condition which gave rise to the said act, omission or failure" (CPLR 214-a). It is well established that this doctrine also applies to the 90-day notice of claim period, which does not begin to run until the last date of treatment, provided that "a course of treatment which includes the wrongful acts or omissions has run continuously and is related to the same original condition or complaint" (Matter of McCoy v City of New York, 10 AD3d 724, 725 [2d Dept 2004]; see also Baltzer v Westchester Med. Ctr., 209 AD3d 815, 816 [2d Dept 2022]).
On this basis, Plaintiff argues that the notice of claim served on or about December 27, 2018 was never untimely, because Decedent was subsequently treated at Columbia University Medical Center, then transferred to Henry J. Carter Specialty Hospital and Gouverneur Hospital, [*5]which are both NYCHHC-owned facilities. They argue her "course of treatment" was ongoing at Gouverneur Hospital, a NYCHHC-owned facility, until the date of her death.
The policy considerations behind the continuous treatment doctrine have been articulated by the Court of Appeals, noting "it would be absurd to require a wronged patient to interrupt corrective efforts by serving a summons on the physician or hospital" (Allende v New York City Health and Hosps. Corp., 90 NY2d 333, 338 [1997]). The toll "seeks to maintain the physician-patient relationship in the belief that the most efficacious medical care will be obtained when the attending physician remains on a case from onset to cure. Implicit in the policy is the recognition that the doctor not only is in a position to identify and correct his or her malpractice, but is best placed to do so." (McDermott v Torre, 56 NY2d 399, 407-408 [1982] [internal citations omitted]). "In the absence of continuing efforts by a doctor to treat a particular condition, none of the policy reasons underlying the continuous treatment doctrine justify the patient's delay in bringing suit" (JaJoute v New York City Health and Hosps. Corp., 242 AD2d 674, 675 [2d Dept 1997]).
As Defendants correctly argue in their opposition, the continuous doctrine requires a three-pronged showing that "(1) the patient 'continued to seek, and in fact obtained, an actual course of treatment from the defendant physician during the relevant period'; (2) the course of treatment was 'for the same conditions or complaints underlying the plaintiff's medical malpractice claim'; and (3) the treatment is 'continuous'" (Hillary v Gerstein, 178 AD3d 674, 678 [2d Dept 2019], quoting Gomez v Katz, 61 AD3d 108, 111-112 [2d Dept 2009]). For the "same conditions or complaints" element to apply, there must be some "objective continuity" between the plaintiff's complaints at the times at issue, and those complaints must correlate to the underlying malpractice claim (Gomez at 114). "Medical visits concerning matters unrelated to the condition at issue giving rise to the claim are insufficient to invoke the benefit of the doctrine" (Baltzer at 816-817).
In a case cited by Defendants, the First Department held continuous treatment does not necessarily apply to "post-stroke rehabilitative care" at a NYCHHC nursing home, which in that case "did not constitute a continuation of treatment for the condition that gave rise to the alleged malpractice," i.e., the alleged failure to diagnose and treat her headache in an emergency room prior to the stroke (Turcios v New York City Health and Hosps. Corp., 191 AD3d 450 [1st Dept 2021], lv. den. 37 NY3d 907). The Second Department has also held that the "continuing nature of a diagnosis does not itself amount to continuous treatment," as in a case where the patient's "postoperative care and palliative treatment" over thirteen years did not demonstrate a course of treatment for her original condition (Evans v Ginsberg, 292 AD2d 566, 566 [2d Dept 2002]; see also Almodovar v St. Vincent's Hosp. and Med. Ctr. of New York, 236 AD2d 435, 435-436 [2d Dept 1997]).
Additionally, the third "continuous" element defines the continuity of treatment "when further treatment is explicitly anticipated by both physician and patient," such as by a "scheduled appointment in the near future" (Gomez, at 112-113). The Court of Appeals has held that continuous treatment may apply even when there is a lengthy gap in treatment by the same doctor or facility (Lohnas v Luzi, 30 NY3d 752, 756 [2018]). However, a key element is "whether treatment was anticipated to continue" by both parties, or whether there was "a timely return visit instigated by the patient" for the same condition (Baltzer at 817). "Where the physician and patient reasonably intend the patient's uninterrupted reliance upon the physician's observation, directions, concern, and responsibility for overseeing the patient's progress, the requirement for continuous treatment is satisfied" (Allende at 338 [internal citations and [*6]quotation marks omitted]).
In Marabello v City of New York (99 AD2d 133 [2d Dept 1984]), the Second Department first dealt with the "novel issue" of whether the continuous treatment doctrine may apply across different facilities within the common ownership of New York City Health and Hospitals Corporation. They held that in establishing the corporation, the legislature "did not evince an intent to bar the toll afforded by the continuous treatment doctrine where the record evinces sufficient facts for its application" (i.d. at 139 [emphasis added]). For example, the court indicated that the continuous treatment doctrine would clearly apply where a patient "is transferred or referred from one municipal hospital to another because the latter facility is possessed of sophisticated medical equipment capable of special and expensive procedures" as part of a continuing effort to treat the same condition (i.d. at 140).
The Court of Appeals later stated expressly that "common ownership by HHC, by itself, does not establish the necessary nexus" for continuous treatment, although they did not "foreclose the possibility that continuous treatment can exist between two hospitals owned by the same entity under the appropriate circumstances" (Pannell v New York City Health and Hosps. Corp., 192 AD3d 1130 [2d Dept 2021], quoting Allende at 339). It is the plaintiff's burden to raise an issue of fact that such circumstances exist.
When a moving defendant establishes prima facie that the plaintiff failed to timely serve a notice of claim, the burden shifts to the plaintiff to show "factual information from which the court could conclude that service of the original notice of claim was timely" (Marabello at 136-137). As to what showing is required by the plaintiff, the facts and opinions set forth in an affidavit/affirmation must be based upon personal knowledge or relevant expertise to be considered competent evidence. While the requirement to "tender evidentiary proof in an admissible form" is generally applied to summary judgment motions, it is applicable to a party seeking to raise an issue of fact as to the statute of limitations and continuous treatment (Sherry v Queens Kidney Ctr., 117 AD2d 663 [2d Dept 1986]). "If the timeliness of the original notice of claim rests on a 'continuous treatment' formula, supporting facts must be presented" (Marabello at 137).
Courts have found that the plaintiff raised an issue of fact as to continuous treatment through exhibits such as the patient's treatment records and deposition testimony (Couch v County of Suffolk, 296 AD2d 194 [2d Dept 2002]); Hill v New York City Health and Hosps. Corp., 147 AD3d 430 [1st Dept 2017]). A physician's expert affirmation may also be used to support the continuous treatment argument, provided that the expert's opinions are sufficiently detailed and supported by the record, rather than conclusory and speculative. An expert may opine, for example, that the symptoms for which the patient sought treatment were related to the same underlying condition (see Ramos v Rakhmanchik, 48 AD3d 657, 658 [2d Dept 2008]). However, it is well established that "expert opinions that are conclusory, speculative, or unsupported by the record are insufficient to raise triable issues of fact" (E. G. v Alzoobaee, 237 AD3d 1052, 1053-1054 [2d Dept 2025]). "In order not to be considered speculative or conclusory," the expert physician must rely on "specifically cited evidence in the record" (i.d.). Opinions set forth in an expert affirmation with no evidentiary support in the record have no probative value (see Brennan v Gagliano, 71 AD3d 620, 621 [2d Dept 2010]).
In support of their continuous treatment argument, Plaintiff submits a physician's affirmation from an internal medicine and emergency medicine physician "in private practice and on staff at Major Metropolitan Hospital." The physician's name and signature line have been redacted, and Plaintiff has not provided an unredacted copy for in camera inspection in [*7]compliance with Richter v Menocal (216 AD3d 823 [2d Dept 2023]). However, the Court disregards this defect pursuant to CPLR 2001 for the purpose of considering the substance of the affirmation.
In relevant part, the physician's affirmation reads:
"8. [Decedent] was transferred to Columbia University Medical Center on or about January 22, 2018. Mrs. Moonblit-Vodovoz remained at Columbia University Medical Center starting from January 22, 2018. While in a coma, intubated and on a ventilator, she was then transferred to Henry J. Carter Specialty Hospital in July of 2018. Mrs. Moonblit-Vodovoz remained at Henry J. Carter Specialty Hospital with a tracheostomy tube and ventilation, feeding tube and severe disability and limitations including but not limited to, an inability to walk, use of upper extremities, impaired speech, brain injury and cognitive impairment.
"9. She was then transferred from Henry J Carter Specialty Hospital to Gouverneur Hospital a NYCHHC facility where she remained and continued to be treated for the injuries she sustained during her initial treatment including an inability to walk, use of upper extremities, impaired speech, brain injury and cognitive impairment until her demise on November 17, 2019."
The Court finds this physician's affirmation is conclusory and fails to provide a sufficient evidentiary basis to raise an issue of fact as to whether the "continuous treatment" doctrine applies.
Although the physician states vaguely that they have reviewed "relevant medical records and testimony," no medical records or testimony have been cited or submitted to the Court. Plaintiff's submissions are devoid of any records showing the substance of her treatment at these institutions to support the argument that she received a continued course of treatment. There is also no documentation provided as to her actual dates of treatment and transfer from Columbia University Medical Center (a non-NYCHHC facility), Henry J. Carter, or Gouverneur Hospital. The physician only states that she began treating at Henry J. Carter in "July of 2018" and was later transferred to Gouverneur Hospital at some time before her death. The physician's statements regarding the conditions she was treated for and their connection to her initial complaints are wholly conclusory and not substantiated by citations to any hospital records or other admissible evidence.
Supporting facts are particularly necessary when "the only factor showing a relationship between the health care providers is their joint ownership by HHC" (Allende at 340). In Marabello, the plaintiff failed to raise an issue of fact on continuous treatment where the patient left Coney Island Hospital, with no evidence of an intent to return, and later received care at NYCHHC's Metropolitan Hospital. The court noted that even when the plaintiff was afforded the opportunity to supplement his notice of claim, "his papers failed to allege any facts consistent [with continuous treatment], for example, that plaintiff was referred by Coney Island Hospital to Metropolitan Hospital . . . or that there were other contacts sufficient to raise an issue of fact as to the continuing nature of the medical services rendered plaintiff by Coney Island Hospital."
Here, Plaintiff has not presented any medical records, nor any testimony or 50-h hearing transcript, to raise an issue of fact on the elements of continuous treatment. The conclusory statements in the physician's affirmation, lacking any supporting details or citations to the record, are insufficient to establish the underlying facts as to Decedent's post-stroke care at Henry J. Carter or Gouverneur Hospital, which he states began sometime after her discharge [*8]from non-party Columbia University Medical Center in July 2018 or "1.5 years" before her death. The unsupported claim that Decedent received rehabilitative or palliative treatment at facilities commonly owned by NYCHHC does not, standing alone, demonstrate a "continuous" course of treatment for the "same conditions or complaints" that gave rise to the alleged malpractice in January 2018. Plaintiff has therefore failed to present supporting facts necessary to raise a genuine issue of fact on the continuous treatment argument.
As noted above, Plaintiff submitted no additional evidence or medical records to support their continuous treatment argument in the CPLR 2221 (e) renewal portion of this motion, despite their opportunity to present "new facts" and a reasonable justification for not including them in their original papers.
For these reasons, the Court finds that Defendants have established prima facie entitlement to dismissal based on the failure to timely file a notice of claim within the statute of limitations period, and Plaintiff has failed to provide any evidence sufficient to raise a genuine issue of fact as to the applicability of the continuous treatment doctrine.
Finally, contrary to Plaintiff's last argument in opposition, Defendants did not waive their right to dismissal on these grounds by holding a 50-h hearing or participating in initial discovery exchanges (see Watts v City of New York, 186 AD3d 1574, 1577 [2d Dept 2020]; Barnaman v New York City Health and Hosps. Corp., 90 AD3d 588, 589-590 [2d Dept 2011]). "Estoppel against a public corporation will lie only when the public corporation's conduct was calculated to, or negligently did, mislead or discourage a party from serving a timely notice of claim and when that conduct was justifiably relied upon by that party" (Matter of Attallah v Nassau Univ. Med. Ctr., 131 AD3d 609, 609-610 [2d Dept 2015]; see also Dier v Suffolk County Water Auth., 84 AD3d 861, 862 [2d Dept 2011]). Plaintiff has not made a sufficient showing that in this case, Defendants "wrongfully or negligently engaged in conduct that misled the plaintiff" and that Plaintiff justifiably relied on that conduct to their detriment (Konner v New York City Tr. Auth., 143 AD3d 774, 776-777 [2d Dept 2016]).
Thus, the Court finds that although Plaintiff has brought a proper motion to substitute the administrator and lift the stay, Defendants are entitled to dismissal of the complaint based on failure to timely serve a notice of claim. Based on the foregoing, the death stay is lifted and Defendants' cross motion to dismiss is granted with prejudice.
Accordingly, it is hereby:
ORDERED that Plaintiff's motion (Seq. No. 3) for an Order, pursuant to CPLR 2221 (d) or (e), to renew or reargue the prior motion (Seq. No. 2), is granted to the extent that the Court grants leave to reargue the prior cross motion; and it is further
ORDERED that upon reargument, the decision and order dated June 6, 2025 is vacated and superseded by this decision and order; and it is further
ORDERED that the Judgment entered upon the prior decision and order on June 23, 2025, is vacated; and it is further
ORDERED that Plaintiff's motion (Seq. No. 1) for an Order, pursuant to CPLR 1015 (a) and CPLR 1021, to substitute the administrator of the estate in this action and lift the stay is granted; and it is further
ORDERED that the stay is lifted and the case restored to active status; and it is further
ORDERED that the caption is amended to read:
YURI VODOVOZ, as Administrator of the Estate of
VICTORIA MOONBLIT-VODOVOZ,
Plaintiff,
against
CONEY ISLAND HOSPITAL, THE NEW YORK
CITY HEALTH AND HOSPITALS CORPORATION,
MATTHEW J. DAVID, ANDREW RIZZO,
Defendants.
ORDERED that the part of Defendants' cross motion (Seq. No. 2) seeking to dismiss this action on the grounds that Plaintiff failed to timely substitute an administrator pursuant to CPLR 1021 is denied; and it is further
ORDERED that the part of Defendants' cross motion (Seq. No. 2) seeking to dismiss this action on the grounds that Plaintiff failed to timely serve a notice of claim pursuant to CPLR 3211 and Gen. Mun. Law § 50-e, is granted; and it is further
ORDERED that this action is dismissed with prejudice.
The Clerk shall enter judgment in favor of CONEY ISLAND HOSPITAL, THE NEW YORK CITY HEALTH AND HOSPITALS CORPORATION, MATTHEW J. DAVID and ANDREW RIZZO in furtherance of this Decision.
This constitutes the decision and order of the Court.
ENTER.
Hon. Consuelo Mallafre Melendez
J.S.C.