■ LOUIS P. JAJOUTE et al., Respondents, v NEW YORK CITY HEALTH AND HOSPITALS CORPORATION, Appellant. [662 NYS2d 786] —In an action to recover damages for medical malpractice, etc., the defendant appeals from an order of the Supreme Court, Queens County (Polizzi, J.), dated September 14, 1995, which, upon granting the plaintiffs' motion for reargument, vacated a prior order of the same court dated July 11, 1995, which had granted the defendant's motion to dismiss the complaint, and thereupon denied the motion.

Ordered that the order is reversed, on the law, the plaintiffs' motion for reargument is denied, and the order dated July 11, 1995, is reinstated.

On December 23, 1992, the injured plaintiff, Louis Paul Jajoute, after having been diagnosed as having prostate cancer, underwent a bilateral orchiectomy in Queens Hospital Center

(hereinafter Queens Hospital). Queens Hospital is owned and operated by the defendant. Jajoute was seen for a post-operative follow-up visit in the out-patient clinic on December 30, 1992, and scheduled to return to the clinic in one month. Jajoute asserted that his last follow-up visit was in February of 1993. On October 6, 1993, Jajoute returned to Queens Hospital complaining of, *inter alia*, pain during urination. A cystoscopy was planned. However, the record does not indicate that Jajoute returned for the procedure. Rather, in December of 1993 the plaintiffs served the defendant with a notice of claim alleging medical malpractice and lack of informed consent arising from the December 1992 surgery. This action was commenced in June of 1994 seeking damages arising from the alleged medical malpractice. After issue was joined, the defendant moved to dismiss the complaint. The defendant argued that, because the plaintiffs' claims accrued in December 1992, neither the service of the notice of claim nor the commencement of the action was timely (*see,* General Municipal Law § 50-i; McKinney's Uncons Laws of NY § 7401 [2] [New York City Health and Hospitals Corporation Act § 7401 (2), as amended by L 1990, ch 804]). The plaintiffs argued that, pursuant to the continuous treatment doctrine, the relevant time limitations had been tolled until a visit to the Queens Hospital on October 6, 1993. On that date, the plaintiffs alleged, Jajoute returned "to complain about and seek treatment for the same urological problem for which [he] initially sought treatment in December, 1992". Thus, the plaintiffs argued, both the service of the notice of claim and the commencement of an action were timely. In the order appealed from, the Supreme Court, *inter alia*, denied the defendant's motion to dismiss, finding issues of fact as to whether the continuous treatment doctrine was applicable. We now dismiss the complaint.

The continuous treatment doctrine is applicable "when the course of treatment which includes the wrongful acts or omissions has run continuously and is related to the same original condition or complaint" (*Borgia v City of New York,* 12 NY2d 151, 155; *see also, McDermott v Torre,* 56 NY2d 399). "In the absence of continuing efforts by a doctor to treat a particular condition, none of the policy reasons underlying the continuous treatment doctrine justify the patient's delay in bringing suit" (*Nykorchuck v Henriques,* 78 NY2d 255, 258-259; *see also, Ganess v City of New York,* 85 NY2d 733). Here, the plaintiffs have failed to support their conclusory assertion that the October 6, 1993, visit to Queens Hospital concerned the "same problem" for which Jajoute initially sought treatment by any evidentiary facts in admissible form. For example, although it appears that

Jajoute did undergo additional surgery in November 1993, the record is completely devoid of any facts concerning such surgery or the condition giving rise to it. The conclusory assertion in the October 6, 1993, hospital record that the plaintiff had "[r]eturn[ed] [with] same problem", does not change this conclusion. There is no evidence in the record on appeal that the hospital record was certified. Thus, the hospital record does not appear to be in admissible form (*see,* CPLR 4518 [c]; *People v Kennedy,* 68 NY2d 569). In any event, the author of the hospital record is not identified and is not even alleged to be a person familiar with Jajoute's prior medical history or the December 1992 surgery. Thus, the source of the above-quoted assertion is unclear and could have been Jajoute himself (*see, Ginsberg v North Shore Hosp.,* 213 AD2d 592). Moreover, the plaintiffs do not allege, and there is no evidence, that the preliminary diagnosis set forth in the October 6, 1993, hospital record indicates that the condition for which Jajoute was seeking treatment was the same for which he initially sought treatment. Although the October 6, 1993, hospital record is denoted a "Continuation Record" the relevance of this fact is not explained. We note that hospital records for several other visits by Jajoute to Queens Hospital, which are not alleged and do not appear to be related to the subject surgery, are also denoted "Continuation Records". In sum, the plaintiffs have failed to raise a triable issue of fact that the October 6, 1993, visit to Queens Hospital was part of a continuous course of treatment by Queens Hospital related to the December 1992 surgery (*see, Blythe v City of New York,* 119 AD2d 615). Thus, this action was not timely and must be dismissed.

In light of this conclusion, we need reach no other issues raised by the defendant. Ritter, Copertino and Thompson, JJ., concur.

Miller, J. P., dissents and votes to affirm with the following memorandum: I do not concur in the majority's conclusion that, as a matter of law, the plaintiffs' claims are not subject to a toll of the Statute of Limitations for continuous treatment. Rather, I find that issues of fact exist which preclude an award of summary judgment in the defendant's favor. Therefore, I would affirm the order denying the defendant's motion.

The majority's opinion accurately reflects the fact that there was a gap of approximately 10 months between the injured plaintiff's December 30, 1992, post-operative follow-up, and his October 1993 return visit. The majority, however, omits reference to the fact that the injured plaintiff's October 6, 1993, medical record, which is specifically denominated a "Continua-

tion Record", recites that the injured plaintiff "returns with same problem—dribbling stream, pain in groin with voiding, sense of incomplete emptying", the very problems for which he previously sought surgical treatment. Indeed, as the injured plaintiff testified at his examination before trial, he went back "facing the same problem" and underwent an additional surgery. While there are no medical records in the record on appeal concerning that further operation, the injured plaintiff's bill of particulars alleges that he was hospitalized from November 4, 1993, through November 7, 1993, and his appellate counsel revealed, without dispute, that the additional surgical procedure was performed during this hospitalization at the defendant's Queens Hospital. Finally, the majority likewise fails to state that the injured plaintiff, whose medical records indicated that he was born in Haiti, disclosed that he left the United States in February 1993 and was away for six months. Thus, we have a reasonable explanation for a good portion of his absence from the defendant's hospital. When all of the relevant facts are thus presented, we are clearly faced with issues of fact as to whether the continuous treatment toll may be invoked in this case.

The majority reaches its conclusion that there can be no continuous treatment toll in this case without explaining its reasoning. It conclusorily finds that the October 1993 visit was not an event in the course of a continuous treatment by the hospital of the injury or complaint for which the plaintiff originally sought treatment. This statement is without basis in the record. Certainly for treatment to qualify as continuous, it must be for the same condition as gave rise to the lawsuit (*see, Nykorchuck v Henriques,* 78 NY2d 255). While the instant record does not clearly explain the plaintiffs' theory of malpractice, the injured plaintiff was diagnosed as suffering from prostate cancer and after having undergone a bilateral orchiectomy (the surgical removal of his testicles), it would appear that the injured plaintiff's October complaints of pain on urination, etc., were the same as led to the surgery. There is simply no factual basis to support the majority's conclusion, as a matter of law, that the injured plaintiff's October 1993 treatment was for a different condition, unrelated to his original complaints which gave rise to his malpractice claims. Unlike the situation in *Ganess v City of New York* (85 NY2d 733) where uncorroborated deposition testimony was held to be insufficient to prove that a certain checkup constituted continuous treatment, here the defendant's own "Continuation Record" documented that the injured plaintiff presented urological complaints on October 6, 1993, which were characterized as the "same problem[s]".

Furthermore, the 10-month gap between the injured plaintiff's surgery in December 1992 and the October 1993 visit does not preclude a finding of continuous treatment as a matter of law. While the presence of substantial gaps has been held to demonstrate that patients have ended the relationships with their physicians, such is not the case in this matter. Indeed, the injured plaintiff left the country for six months after his (unrelated) February visits and then returned to the defendant for further, apparently related, treatments in October. A virtually indistinguishable sequence of events occurred in *Gudmundson v Axelrod* (57 NY2d 930). In that case the plaintiff, a native of Iceland in New York on business, sustained hip injuries which necessitated surgery and a lengthy hospitalization under the defendant's care. Following his December 1973 discharge from the hospital, he returned to Iceland, where he received treatment from a local physician. When he was next in New York the following August, approximately eight months later, he again saw the defendant, complaining that his condition had not satisfactorily improved. The defendant examined the plaintiff, took X-rays and wrote a letter to the plaintiff's physician in Iceland.

The plaintiff sued more than three years after the December 1973 surgery, but within three years (the then-applicable limitations period), of the August 1974 visit. The Supreme Court denied the defendant's motion for summary judgment, but the First Department reversed, finding that the August 1973 visit, which the plaintiff initiated, did not qualify as continuous treatment, and the Statute of Limitations had not been tolled (*Gudmundson v Axelrod*, 88 AD2d 548). The Court of Appeals reversed, holding that questions of fact existed as to whether the treatment by the defendant had been completed, and whether the August 1973 visit "was a timely return visit within the scope of the continuous treatment doctrine enunciated in *McDermott v Torre* (56 NY2d 399)" (*Gudmundson v Axelrod,* 57 NY2d 930, 932, *supra).*

*Gudmundson* appears to be squarely on point to the facts of the instant case. There, an eight-month gap in treatments was held not to preclude the tolling of the Statute of Limitations, notwithstanding that the follow-up visit was not pursuant to an appointment scheduled by the physician. So too, in this case there was at most a 10-month gap while the plaintiff was out of the country, and he resumed the relationship upon his return for further examination of his urological condition.

The majority implies that the policies underlying the continuous treatment toll are not advanced by the facts of this case

and thus the toll is inapplicable as a matter of law. Again I disagree. There is no indication that the rationale underlying the continuous treatment doctrine would not be served under the facts of the instant case. The injured plaintiff did return to the defendant's urology clinic and did renew his complaints regarding the condition related to the alleged malpractice. He was not obligated to interrupt his treatment with a lawsuit to preserve his claims; he was entitled to seek further treatment from the allegedly negligent doctors whose malpractice caused his problems. There is no indication that the injured plaintiff intentionally permitted the relationship of trust and confidence to wither and die.

The defendant's claim that the October 6, 1993, visit does not constitute continuous treatment as a matter of law because the injured plaintiff initiated the visit is without merit. The Court of Appeals stated in *McDermott v Torre* (56 NY2d 399, 406, *supra*) that "a timely return visit instigated by the patient to complain about and seek treatment for a matter related to the initial treatment" is "[i]ncluded within the scope of 'continuous treatment' ". The Court clearly gave effect to this rule in *Gudmundson* and it is equally applicable to the instant case. That the injured plaintiff requested additional medical attention for the "same problem" is facially sufficient to state a viable claim of continuous treatment.

In short, I find that the Supreme Court correctly denied the defendant's motion as the defendant did not establish, as a matter of law, that no continuous treatment toll was available under the facts of this case. As such, I would affirm the order on appeal.