RAYMONDE PIERRE-LOUIS et al., Appellants, v CHING-YUAN HWA et al., Respondents.

Second Department, August 24, 1992

APPEARANCES OF COUNSEL

*Toberoff, Tessler & Schochet,* New York *(Lynn A. Crosson and Rebecca L. Weinstein* of counsel), for appellants.

*Kanterman, Taub & Breitner, P. C.,* New York *(Regina A. Jabbour* on the brief), for Ching-Yuan Hwa and another, respondents.

*Kopff, Nardelli & Dopf,* New York *(Eugene A. Ward* and *Martin B. Adams* on the brief), for Bernard M. Wechsler, respondent.

## OPINION OF THE COURT

LAWRENCE, J.

On this appeal, we must consider the scope of the "continuous treatment" doctrine. The plaintiffs acknowledge that this action was commenced more than 2½ years after the last examination or treatment by any of the defendant physicians. However, the plaintiffs contend that the Statute of Limitations was tolled through February 1, 1988, as a result of "continuous treatment" provided by others at the defendants' hospital.

In 1982, the plaintiff Raymonde Pierre-Louis, who had a pacemaker installed three years before, was hospitalized at Kingsbrook Hospital for premature ventricular contractions (hereinafter PVC's) and diabetes. She was prescribed procainamide, an antiarrythmic drug used to regulate heartbeats, but known to have the potential side-effect of inducing lupus erythematosus syndrome (hereinafter lupus). This medication was continued when the plaintiff was subsequently hospitalized on November 17, 1982, at the Downstate Hospital Medical Center (hereinafter Downstate) for a malfunctioning pacemaker, PVC's, diabetes, and hypertension.

In January 1983 Mrs. Pierre-Louis visited the Cardiology Clinic of Downstate, where the defendant Dr. Ching-Yuan Hwa saw her for the first time. Dr. Hwa, who was then a cardiology fellow at Downstate, continued the medication. In May 1983 Mrs. Pierre-Louis consulted Dr. Hwa at the Cardiology Clinic and complained of joint pain. Recognizing that joint pain might be a sign of lupus, Dr. Hwa ordered that her blood level be checked, but continued the medication. Mrs. Pierre-Louis saw Dr. Hwa again at the Cardiology Clinic in June and July, 1983. In July 1983 he lowered the dosage of procainamide and ordered a rheumatology consultation.

In September 1983 the defendant Dr. David Kaplan, the head of Downstate's Arthritis Clinic, admitted Mrs. Pierre-Louis to Downstate. Suspecting that her symptoms, which now included abdominal upset, indicated procainamide-induced lupus, Dr. Kaplan ordered that the medication be discontinued. She was discharged on October 8, 1983, with a diagnosis, *inter alia,* of "Drug Induced SLE [systemic lupus erythematosus]". Her condition was noted to be "improving" with the cessation of procainamide.

Mrs. Pierre-Louis continued visiting the Cardiology, Arthritis, and Dermatology Clinics of Downstate for treatment of the lupus until February 1, 1988. However, Dr. Hwa last saw her in April 1984 and completed his fellowship at Downstate on June 30, 1984. Dr. Kaplan last saw her on October 8, 1983, and had no involvement with her after November 1986 the last date his name appears on any clinic records. The defendant Dr. Bernard M. Wechsler, an associate professor at Downstate who claims he never treated the plaintiff but signed two of her laboratory reports in 1983 and 1984, retired from Downstate in 1984.

In February 1987 the plaintiff Raymonde Pierre-Louis brought a claim against the State of New York in the Court of Claims alleging malpractice against Downstate. That claim is not before this court. In July 1989 the plaintiffs commenced the instant action against these individual physicians. The Supreme Court dismissed the complaint on the ground that it was time barred. We affirm.

Medical malpractice actions ordinarily must be commenced "within two years and six months of the act, omission or failure complained of" (CPLR 214-a). However, under the "continuous treatment" doctrine, "the time in which to bring a malpractice action is stayed 'when the course of treatment which includes the wrongful acts or omissions has run continuously and is related to the same original condition or complaint' " *(McDermott v Torre,* 56 NY2d 399, 405, quoting from *Borgia v City of New York,* 12 NY2d 151, 155; *see also,* CPLR 214-a). On appeal, the plaintiffs argue that the hospital's "continuous treatment" through February 1, 1988, tolled the Statute of Limitations. This argument misapprehends the purpose and nature of the continuous treatment rule.

While the continuous treatment rule dates back to at least 1923 *(see, Borgia v City of New York, supra; Sly v Van Lengen,* 120 Misc 420), its essential purpose remains the same: to

"maintain the physician-patient relationship in the belief that the most efficacious medical care will be obtained when the attending physician remains on a case from onset to cure" *(McDermott v Torre, supra,* at 408). "The doctrine rests on the premise that it is in the patient's best interest that an ongoing course of treatment be continued, rather than interrupted by a lawsuit, because 'the doctor not only is in a position to identify and correct his or her malpractice, but is best placed to do so' " *(Nykorchuck v Henriques,* 78 NY2d 255, 258, quoting from *McDermott v Torre, supra,* at 408; *see also, Barrella v Richmond Mem. Hosp.,* 88 AD2d 379, 383). "It would be absurd to require a wronged patient to interrupt corrective efforts by serving a summons on the physician or hospital" *(Borgia v City of New York, supra,* at 156).

Though the policy underlying the continuous doctrine rule is clear, its application has been complicated by the fact that patients frequently receive medical care for the same condition from more than one physician or health care facility. Thus, courts have had to consider whether treatment or services rendered by one provider should be "imputed" to other previous providers. Where, as here, a plaintiff seeks to impute a subsequently treating physician's continued treatment of a patient to a physician alleged to have earlier committed malpractice who is no longer involved in the patient's care, the continuous treatment doctrine is not available unless there is evidence of "some relevant continuing relation" between the patient and the allegedly negligent doctor during the period of the subsequent treatment or "an agency or other relevant relationship" between the allegedly wrong-doing physician and the subsequent treating physician *(McDermott v Torre, supra,* at 403).

In *Swartz v Karlan* (107 AD2d 801), for example, the plaintiff commenced an action against a neurologist who had been referred to the plaintiff by a general practitioner. The neurologist diagnosed the plaintiff's condition, prescribed certain medicine, and treated him for the next four years. During the following seven years, the plaintiff visited only the general practitioner, who continued the medication. The general practitioner had no contact with the neurologist during this period other than a single telephone call to verify the proper dosage. Under these circumstances, the court rejected the plaintiff's attempt to impute the continuous treatment of the general practitioner to the neurologist. The court reasoned *(Swartz v Karlan, supra,* at 803, quoting from McLaughlin, 1983 Supp

Practice Commentary, McKinney's Cons Laws of NY, Book 78, CPLR 214-a, at 185 [1983-1984 Pocket Part]): "it is not 'sufficient for imputation purposes to demonstrate that the treating doctor relied on somebody else's diagnosis. Rather, a continued relationship must be shown between the treating doctor and the misdiagnosing defendant in order to prolong the statute of limitations against the latter' * * * Plaintiffs have presented no evidence to support such a relationship. [The neurologist and general practitioner] were independent professionals, with no relationship other than referrals for matters outside their field of expertise".

In the instant case, the defendants established that they maintained no relevant relationship with either the plaintiff Raymonde Pierre-Louis or the physicians who rendered the subsequent treatment to her. Dr. Hwa cared for her from January 1983 until April 1984 during his two-year salaried cardiology fellowship which terminated on June 30, 1984, five years prior to the commencement of the action. Dr. Kaplan last saw Mrs. Pierre-Louis on October 8, 1983, or, if his signature on a clinic entry may be considered "treatment", November 1986, more than 2½ years prior to being served. Dr. Wechsler, who claims that he never treated Mrs. Pierre-Louis and whose liability the plaintiffs predicate on a 1983 and 1984 laboratory report bearing Dr. Wechsler's name, terminated his relationship with Downstate in February 1984, five years prior to the commencement of this action. As in *Evra v Hillcrest Gen. Hosp.* (111 AD2d 740), where this court refused to impute subsequent treatment by a physician affiliated with a hospital to a prior-treating physician employee of the same hospital who left the employ of the hospital more than two and one half years prior to the commencement of the action, policy considerations do not militate in Mrs. Pierre-Louis's favor. Any relationship between the defendants and her had terminated and there was no impediment to her bringing suit against them in their individual capacities *(see, McDermott v Torre, supra,* at 408; *Borgia v City of New York, supra,* at 156; *Watkins v Fromm,* 108 AD2d 233, 239).

Moreover, the plaintiffs have failed to demonstrate the existence of a legally relevant relationship between the defendants and the subsequently treating Downstate doctors. That the defendants and their successors were "coemployees" of Downstate is insufficient for the imputation of the latter's continuous treatment to the former for the purpose of tolling the Statute of Limitations *(see, e.g., Evra v Hillcrest Gen.*

*Hosp., supra; Swartz v Karlan, supra; Diller v Munchmeyer,* 130 AD2d 868). Further, unlike in *Watkins v Fromm (supra),* there is no proof here that the defendants and their successors practiced as a team or that the clinics in which they worked operated in a manner resembling a medical group.

In brief, the plaintiffs have failed to satisfy their burden of demonstrating that the continuous treatment doctrine applies to toll the Statute of Limitations against the defendants *(see, Blythe v City of New York,* 119 AD2d 615). Accordingly, the order dismissing the complaint as time barred is affirmed, with one bill of costs.

BRACKEN, J. P., RITTER and COPERTINO, JJ., concur.

Ordered that the order is affirmed, with one bill of costs to the respondents appearing separately and filing separate briefs.