*735 OPINION OF THE COURT
Per Curiam.
Plaintiff was born on August 6, 1973 at Elmhurst General Hospital, Queens County, with a medical condition known as Erb’s palsy, which affects his left shoulder and arm. Beginning shortly after his birth, plaintiff visited doctors at the Hospital’s Pediatric Neuromuscular Rehabilitation Clinic where his condition was monitored and his parents received instruction in a therapeutic program of home exercises.
At a meeting with his parents when plaintiff was 3 Vi years old, the doctors at Elmhurst explained that plaintiff’s injuries were likely to be permanent. At that meeting, plaintiff’s mother discussed with the doctors whether plaintiff’s delivery by Gsection might have prevented the condition.
On May 18, 1984, nearly 11 years after his birth, plaintiff filed a notice of claim against defendants alleging negligence by the medical personnel involved in his 1973 delivery.
Since a notice of claim in any medical malpractice action against defendants must be filed within 90 days after the claim arises (General Municipal Law § 50-e; McKinney’s Uncons Laws of NY § 7401 [2] [New York City Health and Hospitals Corporation Act § 20 (2); L 1969, ch 1016, § 1, as amended]), and plaintiff indisputably failed to file such a notice until nearly 11 years after the alleged negligence, the only question before the Court is whether plaintiff can invoke the continuous treatment doctrine to excuse his delay (see, Matter of Daniel J. v New York City Health & Hosps. Corp., 77 NY2d 630, 633).
Under the continuous treatment doctrine, the time in which a plaintiff must bring an action alleging malpractice is stayed "when the course of treatment which includes the wrongful acts or omissions has run continuously and is related to the same original condition or complaint” (Borgia v City of New York, 12 NY2d 151, 155). As this Court has stated: "[t]he policy underlying the continuous treatment doctrine seeks to maintain the physician-patient relationship in the belief that the most efficacious medical care will be obtained when the attending physician remains on a case from onset to cure. * * * Implicit in the policy is the recognition that the doctor not only is in a position to identify and correct his or her malpractice, but is best placed to do so” (McDermott v Torre, 56 NY2d 399, 408 [citations omitted]). Thus, it is "essential to the application of the doctrine * * * that there has been a *736 course of treatment established with respect to the condition that gives rise to the lawsuit. * * * [N]either the mere 'continuing relation between physician and patient’ nor 'the continuing nature of a diagnosis’ is sufficient” (Nykorchuck v Henriques, 78 NY2d 255, 258 [citations omitted]).
Despite the trial court and Appellate Division writings in the present case, neither individuals suffering from chronic conditions, nor patients being "monitored” for a specific medical condition to ensure that it improves or at least does not deteriorate (as opposed to a general physical examination), are necessarily outside the doctrine (see, Richardson v Orentreich, 64 NY2d 896, 899).
Here, however, plaintiff failed to show that the treatment rendered was continuous for the entire 11-year period now alleged. The last notation on plaintiff’s medical chart is dated September 21, 1983. Plaintiff’s primary physician treating the Erb’s palsy, Dr. Beatrice Kaplan, testified that she last saw plaintiff in August 1983. Plaintiff’s father, in an affidavit submitted in opposition to defendants’ motion for summary judgment, claimed merely that he and his wife continued to take plaintiff to the hospital clinic "once a year” after 1983, yet provided no concrete information as to the dates of such visits or the treatment (if any) rendered. The conclusory assertion of the supposedly continuous nature of plaintiff’s treatment was insufficient, as a matter of law, to rebut the documentary and testimonial evidence to the contrary and thus to establish plaintiff’s entitlement to the doctrine (see, Curdo v Ippolito, 63 NY2d 967).
Given the above, we need not and do not address a potentially intriguing idiosyncrasy of this case — namely, that the negligence was allegedly committed by an obstetrician at plaintiff’s birth, whereas the ensuing 11 years of admittedly nonnegligent treatment were provided by an entirely different set of doctors with a different medical specialty (see, Pierre-Louis v Ching-Yuan Hwa, 182 AD2d 55, 57; Dundon v United States, 559 F Supp 469, 472; but see, Ulrich v Veterans Admin. Hosp., 853 F2d 1078, 1080). Nor is there any claim that the infancy toll provisions of CPLR 208 read in accordance with General Municipal Law § 50-e (5) would serve to remedy the untimeliness problem here as plaintiff failed to file his notice of claim within 10 years, 90 days of the alleged malpractice (compare, LaBello v Albany Med. Ctr. Hosp., 85 NY2d 701 [decided today], with Daniel J., supra).
*737 Accordingly, the order of the Appellate Division should be affirmed, with costs.