OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 Did the continuous treatment doctrine toll the 90-day period in which plaintiff was required to file a notice of claim against defendant New York City Health and Hospitals Corporation (HHC)? Both because plaintiff’s statements and actions indicate that she did not intend to return to the site of her initial treatment, and because the additional treatment she received at another HHC-owned hospital did not qualify as continuous treatment, we reverse the Appellate Division order and dismiss the complaint.
 

 I.
 

 On April 12, 1985, at her personal physician’s recommendation, plaintiff Rosaura Allende went to the emergency room of Lincoln Hospital, complaining of a fever and back and chest pains. Lincoln is owned by HHC. Plaintiff was diagnosed with pneumonia and was admitted to Lincoln for immediate treat
 
 *336
 
 ment. Her condition worsened, necessitating a lengthy stay, and an arterial catheter was placed in her left wrist to monitor the oxygenation of her blood.
 

 Upon the catheter’s removal, plaintiff began to experience circulation problems in her left hand. At the time these problems were first noticed, attending physicians at Lincoln considered procedures to improve the circulation but eventually rejected them because of plaintiff’s weakened condition. Her left hand discolored, and her left middle and index fingertips ultimately became gangrenous.
 

 When plaintiff was discharged on July 4, 1985, a doctor at Lincoln informed her that the gangrenous parts of her fingers would eventually dry and fall off. She was advised to return to Lincoln at that time so that her hand could be examined. The. gangrenous areas of plaintiff’s fingers subsequently hardened and began to chip away, but plaintiff did not return to Lincoln. At several clinics in her neighborhood which were unaffiliated with HHC she was told that they could do nothing for her hand, and that she would have to seek attention at a hospital. On December 14, 1985, the gangrenous tip of her left index finger came off but plaintiff did not return to Lincoln or seek medical attention at that time.
 

 Plaintiff later sought care for treatment of conditions unrelated to her fingers at North Central Bronx Hospital, another HHC facility. She visited North Central three times between December 27, 1985 and January 9, 1986, and complained of pain in her left hand only on her last visit. On January 25, 1986, when her left middle finger was smashed by a window which fell as she attempted to open it, the gangrenous portion of that finger came loose, and plaintiff went to the emergency room of North Central, where doctors amputated the loose portion of the finger.
 

 Plaintiff served a notice of claim on HHC on March 28, 1986 and commenced the instant suit, claiming that a surgical procedure, which could have saved the circulation in her left hand and prevented the ultimate loss of her two fingers, should have been performed at Lincoln.
 

 Before trial, HHC moved to dismiss the complaint or alternatively for summary judgment on the ground that plaintiff failed to comply with the 90-day limitations period for filing a notice of claim (General Municipal Law § 50-e; McKinney’s Uncons Laws of NY § 7401 [2] [New York City Health and Hospitals Corporation Act § 20 (2); L 1969, ch 1016, § 1, as
 
 *337
 
 amended]). Supreme Court denied the motion, holding that issues of fact existed concerning continuous treatment, and the Appellate Division affirmed. After trial, the jury returned a $1,000,000 verdict in plaintiffs favor.
 

 By posttrial motion, defendant again sought to dismiss the complaint for failure to file a timely notice of claim or alternatively to set aside the verdict as excessive. The trial court denied the motion to dismiss, finding that the doctrine of continuous treatment applied. The court noted "it is undisputed that plaintiff and the physicians at Lincoln who treated her expected that she would ultimately return for further treatment to her fingers,” concluding that "plaintiff intended to utilize HHC facilities for her finger injuries and treatment. Indeed, plaintiff’s election to seek subsequent treatment at North Central Bronx rather than Lincoln does not destroy, legally speaking, a claim of continuous treatment by HHC.” The court, however, granted defendant’s motion to the limited extent of finding the award for future pain and suffering to be excessive, ordering a new trial on damages unless plaintiff stipulated to a reduced award of $750,000 (which plaintiff did). The Appellate Division affirmed. We granted leave to appeal, and now reverse.
 

 II.
 

 A notice of claim in a medical malpractice action against HHC must be filed within 90 days after the claim arises (General Municipal Law § 50-e; McKinney’s Uncons Laws of NY § 7401 [2] [New York City Health and Hospitals Corporation Act § 20 (2); L 1969, ch 1016, § 1, as amended]). Since plaintiff failed to file such a notice until more than six months after the alleged negligence at Lincoln and never sought permission to file a late notice of claim, her claim can be saved only by the continuous treatment doctrine we first articulated in
 
 Borgia v City of New York
 
 (12 NY2d 151, 155) and which was later codified in CPLR 214-a.
 
 [1]
 
 Under plaintiff’s theory, her notice of claim was timely because it was filed within 90 days of her January 25, 1986 treatment at North Central — on March 28, 1986. There is no dispute that, if otherwise applicable to the facts of this case, the continuous treatment doctrine applies to
 
 *338
 
 the time in which to file a notice of claim under General Municipal Law § 50-e
 
 (Borgia v City of New York, supra,
 
 12 NY2d, at 155;
 
 see also, Davis v City of New York,
 
 38 NY2d 257).
 

 Under the continuous treatment doctrine, "the time in which to bring a malpractice action is stayed 'when the course of treatment which includes the wrongful acts or omissions has run continuously and is related to the same original condition or complaint’ ”
 
 (McDermott v Torre,
 
 56 NY2d 399, 405, quoting
 
 Borgia v City of New York, supra,
 
 12 NY2d, at 155). As we have recognized, it "would be absurd to require a wronged patient to interrupt corrective efforts by serving a summons on the physician or hospital”
 
 (Borgia v City of New York, supra,
 
 12 NY2d, at 156). Further, we have noted that the doctor committing the alleged malpractice is not only in a position to identify and correct any mistakes but also best placed to do so
 
 (Ganess v City of New York,
 
 85 NY2d 733, 735;
 
 Cooper v Kaplan,
 
 78 NY2d 1103). One of the elements of continuous treatment is that
 

 "further treatment is explicitly anticipated by
 
 both
 
 physician and patient as manifested in the form of a regularly scheduled appointment for the near future, agreed upon during that last visit, in conformance with the periodic appointments which characterized the treatment in the immediate past. * * * [W]here the physician
 
 and
 
 patient reasonably intend the patient’s uninterrupted reliance upon the physician’s observation, directions, concern, and responsibility for overseeing the patient’s progress, the requirement for continuous * * * treatment * * * [is] satisfied.”
 
 (Richardson v Orentreich,
 
 64 NY2d 896, 898-899 [emphasis added];
 
 see also, Cox v Kingsboro Med. Group,
 
 88 NY2d 904.)
 

 The trial court and Appellate Division found, on the facts before them, that this requirement had been satisfied — that both plaintiff and the doctors at Lincoln expected that she would return for further treatment on her fingers. Affirmed factual findings are beyond the scope of our review so long as they are supported by some evidence in the record
 
 (see, e.g., Stiles v Batavia Atomic Horseshoes,
 
 81 NY2d 950, 951).
 

 While there is ample support for the finding that the doctors at Lincoln expected plaintiff to return, there is no evidence that plaintiff herself shared that intention. Plaintiff
 
 *339
 
 never testified that she planned to visit Lincoln following her discharge. Quite the contrary, when asked on direct examination why she did not return to Lincoln for treatment, she stated, "[b]ecause I did not have faith any more in that hospital.”
 
 [2]
 

 Plaintiffs actions similarly indicate that she did not intend to return to Lincoln. She sought no medical attention when part of her index finger came off in December 1985. When her middle finger was smashed by the window the following month, she went to North Central, not Lincoln. Plaintiff also testified that she visited other clinics after her discharge from Lincoln: "the clinic where I used to live,” "Burnside Clinic,” and "another one that is on 176th and Jerome.” The record is therefore bereft of support for the finding that plaintiff intended "uninterrupted reliance upon [Lincoln] physician’s observation, directions, concern, and responsibility for overseeing the patient’s progress”
 
 (Richardson v Orentreich,
 
 64 NY2d 896, 899,
 
 supra).
 

 Nor does plaintiff’s situation comport with the policies behind the continuous treatment doctrine. As plaintiff herself no longer had any faith in Lincoln she cannot be said to have had the " 'continuing trust and confidence’ ” in her health care providers that underlies the continuous treatment doctrine
 
 (Richardson v Orentreich, supra,
 
 at 898, citing
 
 Coyne v Bersani,
 
 61 NY2d 939, 940). Moreover, because there is no evidence that plaintiff herself contemplated any continuity of relationship, declining to apply the continuous treatment doctrine would not "require a wronged patient to interrupt corrective efforts by serving a summons on the [negligent treatment provider]”
 
 (Borgia v City of New York,
 
 12 NY2d 151, 156,
 
 supra).
 

 III.
 

 Plaintiff’s reliance on the continuous treatment doctrine suffers additionally from the fact that the subsequent treatment she received was at a different medical facility, by different doctors. Where the continuing treatment is provided by someone other than the allegedly negligent practitioner, there must be " 'an agency or other relevant relationship’ ” between the health care providers
 
 (Meath v Mishrick,
 
 68 NY2d 992, 994, quoting
 
 McDermott v Torre,
 
 56 NY2d 399, 403,
 
 supra).
 
 Plaintiff
 
 *340
 
 urges that the "relevant relationship” exists here simply because Lincoln and North Central are both owned by HHC.
 

 Plaintiff contends that since HHC owns and operates all New York City hospitals (McKinney’s Uncons Laws of NY § 7386 [1] [a] [New York City Health and Hospitals Corporation Act § 6 (a); L 1969, ch 1016, § 1 (§ 6), as amended]), filing a notice of claim as to one HHC hospital would interrupt the care received at any of the facilities under its auspices and trigger the continuous treatment doctrine. We conclude, however, that HHC’s ownership alone does not establish the necessary nexus.
 

 As we have recognized in an analogous situation, an individual practitioner’s affiliation with a hospital is insufficient to create a "relevant relationship” between the two
 
 (Meath v Mishrick,
 
 68 NY2d 992, 994, supra;
 
 see also, Ruane v Niagara Falls Mem. Med. Ctr.,
 
 60 NY2d 908). Mere common ownership of two hospitals by HHC is even less of a nexus. Nor does application of the doctrine here advance its underlying policies. Filing a notice of claim against HHC for the negligence of doctors at one hospital would not necessarily affect the care and treatment received at another HHC facility. The "risk that the physician-patient relationship will be destroyed”
 
 (Rizk v Cohen,
 
 73 NY2d 98, 104) simply is not present when the only factor offered is common ownership by HHC.
 

 Taken to its extreme, the rule plaintiff advocates would allow patients to move among HHC-owned hospitals indefinitely, keeping alive the Statute of Limitations for malpractice actions. That would deny the health care provider both the repose of the Statute of Limitations
 
 (see, McCarthy v Volkswagen of Am.,
 
 55 NY2d 543, 548;
 
 Ratka v St. Francis Hosp.,
 
 44 NY2d 604, 612) and the opportunity to detect and correct any prior negligent care
 
 (Ganess v City of New York,
 
 85 NY2d 733, 735,
 
 supra; Cooper v Kaplan,
 
 78 NY2d 1103,
 
 supra).
 

 We do not foreclose the possibility that continuous treatment can exist between two hospitals owned by the same entity under the appropriate circumstances
 
 (cf., Cotto v City of New York,
 
 99 AD2d 748;
 
 Marabello v City of New York,
 
 99 AD2d 133, 145 [Weinstein, J., concurring]), and save that issue for another day. However, where, as here, the only factor showing a relationship between the health care providers is their joint ownership by HHC, we decline to apply the continuous treatment doctrine.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, and the complaint dismissed.
 

 
 *341
 
 Judges Titone, Bellacosa, Smith, Levine, Ciparick and Wesley concur.
 

 Order reversed, etc.
 

 [1]
 

 . CPLR 214-a provides in relevant part: "An action for medical, dental or podiatric malpractice must be commenced within two years and six months of the act, omission or failure complained of or last treatment where there is continuous treatment for the same illness, injury or condition which gave rise to the said act, omission or failure” (CPLR 214-a).
 

 [2]
 

 . Although not evidence, we note that plaintiffs counsel stated in opening argument "there was absolutely no desire by Mrs. Allende to go back to Lincoln Hospital under any circumstances.”