■ JERMAINE W. PLUMMER et al., Respondents, v NEW YORK CITY HEALTH AND HOSPITALS CORPORATION, Appellant. [729 NYS2d 70] —Order, Supreme Court, Bronx County (Douglas McKeon, J.), entered March 28, 2000, which, to the extent appealed from, denied defendant's motion for summary judgment on the ground of plaintiffs' failure to timely file a notice of claim pursuant to General Municipal Law § 50-e, affirmed, without costs.

While we affirm the result, we differ with the motion court's reasoning. There is no evidence of defendant's wrongfully or negligently inducing reliance by plaintiffs to their detriment, as required for an estoppel (*see, Cabreaja v New York City Health & Hosps. Corp.*, 201 AD2d 319, 321). *Brown v City of New York* (264 AD2d 493), relied upon by the motion court, is clearly distinguishable on its facts. Also, in finding the question of whether there was continuous treatment irrelevant, the court's reliance upon *Matter of Janvier v New York City Health & Hosps. Corp.* (162 AD2d 342, *lv denied* 76 NY2d 711) was

misplaced inasmuch as, unlike that case, plaintiff's notice of claim was filed within 10 years of his date of birth, when his cause of action for medical malpractice accrued (*see*, CPLR 208). Morever, in *Janvier*, the infant visited the hospital where she was born only for general checkups, immunization and other treatment related to the Erb's Palsy, whereas here questions of fact were presented by the opposing affidavits of plaintiff's mother and doctors as to whether the infant's visits to North Central Bronx Hospital during the period from his birth on May 21, 1985 to October 18, 1990, when plaintiff's notice of claim was filed, constituted continuous treatment for the Erb's Palsy and other injuries suffered as a result of defendant's alleged malpractice. Concur—Mazzarelli, Andrias and Lerner, JJ.

Williams, J. P., and Friedman, J., dissent in a memorandum by Friedman, J., as follows: The question presented by this appeal is whether the time to serve a notice of claim may be tolled under a "continuous-treatment-by-an-institution" theory. Specifically, does the nonnegligent treatment rendered by the pediatric and rehabilitation clinics of a New York City Health and Hospitals Corporation (HHC) facility toll the time in which to serve a notice of claim against HHC where the negligent treatment was rendered by the obstetrical unit of that same facility? The Appellate Division, Second Department, seems to have rejected a finding of continuous treatment under such circumstances (*see*, *Pierre-Louis v Ching-Yuan Hwa*, 182 AD2d 55) and the Court of Appeals, in *Ganess v City of New York* (85 NY2d 733), left the question open. The majority, by its affirmance, necessarily adopts the continuous-treatment-by-an-institution theory as a basis for tolling the Statute of Limitations. Because I do not believe that this theory furnishes a basis for a toll, I respectfully dissent.

Plaintiff was born on May 21, 1985 at North Central Bronx Hospital (NCBH), a hospital owned and operated by HHC. In addition to a heart murmur and hydrocele, plaintiff, at the time of his birth, suffered from Erb's Palsy in his left arm and respiratory failure, which allegedly caused brain damage. Immediately after his birth, plaintiff was transferred to the hospital's special care pediatrics nursery where he spent the next 10 days until his discharge. According to Sharon Heron,[1] plaintiff's mother, during this period of hospitalization plaintiff's pediatrician, Dr. Traeger, explained to her that

---

1. Plaintiff Sharon Heron, insofar as she asserted a derivative claim on her own behalf, is no longer a party to this action. As conceded by her before Supreme Court, her claim is time-barred.

plaintiff suffered from various medical problems and that damage to his left arm occurred during the birth.

Upon plaintiff's discharge, Dr. Traeger referred him to three different clinics: to treat his cardiac condition, he was referred to Montefiore Hospital Medical Center (Montefiore), a facility unrelated to NCBH; to treat his Erb's Palsy, he was referred to NCBH's Rehabilitation Clinic; and, to address routine health care, he was referred to the hospital's Pediatric Clinic. Thereafter, plaintiff sporadically presented to the various clinics.

In or about September 1988, Ms. Heron advised NCBH that she and plaintiff would be moving to Miami, Florida. In view of this, NCBH informed her that she could seek medical care for plaintiff at Miami Children's Hospital. She was also told that plaintiff's medical records would be forwarded to that hospital upon its request.

Before moving to Florida, plaintiff appeared for several more visits at NCBH, with the last visit occurring in March 1989, when plaintiff presented for possible tuberculosis exposure. After this visit, it appears that plaintiff and his mother moved to Florida, and plaintiff did not present at NCBH again until nine months later, in January 1990, for routine health care. At this visit, the medical record indicates that plaintiff's mother advised NCBH that she and plaintiff had moved back to New York with the intention of living in the Bronx.

After that, plaintiff appeared in May 1990 at the NCBH Pediatric Clinic for a physical examination and immunizations required for his kindergarten class, and in July 1990 at the Pediatric Walk-in Clinic complaining of a scalp infection. For an entire year following the July visit, there is no record of plaintiff presenting at NCBH at all. After this year, plaintiff again appeared sporadically at NCBH for matters ranging from routine health care maintenance to visits for complaints of cough and cold.

As to the litigation posture of this action, on October 18, 1990 (five years before plaintiff's last visit to NCBH), a notice of claim was filed on behalf of plaintiff, alleging that he suffered various injuries because NCBH "failed to render proper medical care and treatment during the prenatal period and the negligent and careless management of labor, delivery, and post natal course of the infant plaintiff." Notwithstanding this broad claim of negligence, after the complaint was served on November 13, 1991, it became clear that plaintiff's claims of negligence were based exclusively upon the events that took place when plaintiff was delivered, i.e., the negligence allegedly committed by the obstetrician or other members of the obstetrical unit at the time of plaintiff's birth.

Thereafter, in August 1999, defendant moved for summary judgment dismissing the complaint on the ground that plaintiff failed to serve a notice of claim within 90 days of the alleged malpractice, a prerequisite to maintaining an action against HHC (*see*, General Municipal Law § 50-e; McKinney's Uncons Laws of NY § 7401 [2] [New York City Health and Hospitals Corporation Act § 20 (2); L 1969, ch 1016, § 1, as amended]). Plaintiff, in opposing the motion, argued that the notice of claim, although served five years after the alleged malpractice, was nevertheless timely because it was served within 90 days of the last date of a continuous course of treatment by defendant of plaintiff's Erb's Palsy (*see*, CPLR 214-a; *Allende v New York City Health & Hosps. Corp.*, 90 NY2d 333, 337-338).[2] I believe that plaintiff's position is without merit and that summary judgment should have been granted in defendant's favor.

I begin with the observation that the alleged malpractice in this case was committed by doctors with the obstetrical unit of NCBH. The continuous treatment upon which plaintiff relies for purposes of tolling his time to file the notice of claim, however, was provided by a completely distinct set of doctors and clinics operated by NCBH. Thus, if the continuous treatment doctrine is to be applicable, there must be some sort of "agency or other relevant relationship" (*see*, *Meath v Mishrick*, 68 NY2d 992, 994) that would permit the imputation of treatment from the nonnegligent health care providers to the negligent one. Here, there was no such relationship.

The mere fact that the practitioners who attended to plaintiff's birth and the clinics that subsequently treated him are affiliated with NCBH is insufficient to establish a "relevant relationship" for purposes of imputing treatment (*see*, *Ganess v City of New York*, 85 NY2d 733, 738, *supra*; *Meath v Mishrick*, *supra*). Moreover, even if the allegedly negligent practitioners referred plaintiff to the various clinics for ongoing treatment, this would not establish the requisite relationship. In this regard, plaintiff failed to demonstrate that there is a "master-

---

**2.** Although the notice of claim was served within the 10-year infancy toll provided by CPLR 208, that toll does not assist plaintiff. Plaintiff never sought permission to file a late notice of claim within 10 years of his birth (when the action accrued) and defendant's motion for dismissal was made after the 10-year period provided by CPLR 208 expired. It is for this reason that plaintiff must rely exclusively upon the continuous treatment doctrine (*see*, *Allende v New York City Health & Hosps. Corp.*, 90 NY2d 333, 337; *Sarjoo v New York City Health & Hosps. Corp.*, 252 AD2d 449 [service of late notice of claim without court permission ineffectual]). Thus, while the majority points to CPLR 208 in support of its affirmance, as our decision in *Sarjoo* make clear, such reliance is misplaced.

servant or principal-agent relationship" between the obstetrical unit of the hospital and the various clinics where he was subsequently treated (*see*, *Ganess v City of New York, supra*; *Florio v Cook*, 48 NY2d 792, *affg* 65 AD2d 548). Accordingly, the only possible basis for finding the continuous treatment doctrine applicable would be because the negligent obstetrician who delivered plaintiff and the non-negligent clinics that treated him thereafter all operated under the umbrella of NCBH, an HHC facility. As to this issue, *Ganess v City of New York* (*supra*) is instructive.

In *Ganess*, the infant plaintiff was allegedly injured by the negligence of the delivering obstetrician during his birth. Beginning shortly after his birth, plaintiff visited the rehabilitation clinic of the same hospital, where his condition was monitored and his parents were given instruction in a therapeutic program of home exercises. The majority held that the plaintiff's conclusory assertions that he had been continuously treated since his birth were insufficient to rebut the documentary and testimonial evidence to the contrary. In view of this, the majority did not reach what it termed as the "potentially intriguing idiosyncrasy of [the] case—namely, that the *negligence* was allegedly committed by an obstetrician at plaintiff's birth, whereas the ensuing 11 years of admittedly nonnegligent *treatment* were provided by an entirely different set of doctors with a different medical specialty" (*id.*, at 736).

Judge Titone, although agreeing with the majority, wrote separately "to emphasize [his] own serious questions as to whether the most fundamental requirement of the continuous-treatment doctrine—i.e., an unbroken course of treatment by a particular practitioner or closely affiliated group of practitioners—was satisfied here" (*id.*, at 737). In expressing this doubt, Judge Titone stated: "However superficially appealing this [theory] may be, it cannot be accepted uncritically as a basis for applying the continuous-treatment rule. First, treating the hospital as a unitary provider for purposes of the continuous-treatment doctrine is questionable because it could lead to circumvention of the *Meath v Mishrick* (*supra*) principle that the practitioners' common affiliation with a particular hospital cannot furnish the necessary continuity. Second, the approach is troubling because it would lead to the application of the continuous-treatment toll in cases where its purposes would not necessarily be advanced. A hospital may fairly be held liable for the negligent acts of its clinics under the traditional respondeat superior principles. However, a hospital is an impersonal entity that can provide medical care only in the

abstract sense and is certainly not capable of forming the intimate one-on-one physician-patient relationship that the continuing-treatment doctrine was designed to protect * * * Finally, permitting use of the continuous-treatment toll where the injured patient has been treated by separate clinics that happen to be operated by the same large medical institution would inevitably lead to differential treatment for those who rely on such institutions as their primary health-care providers and those who rely on private providers operating individually or in small, professionally homogenous groups." (*Id.*, at 738 [citation omitted].)

Notwithstanding these reasons for rejecting what was termed the "continuous-treatment-by-an-institution theory" (*id.*, at 739), the Court of Appeals abstained from affirmatively determining this issue because it had not been raised by the defendant (*id.*). On the appeal before us, however, the issue has been presented, and the majority, by its affirmance, necessarily adopts the "continuous-treatment-by-an-institution theory" as a new basis for a toll. For the reasons stated below, I would reject this theory as a basis for finding continuous treatment.

"The purpose of the [continuous treatment] doctrine is to 'maintain the physician-patient relationship in the belief that the most efficacious medical care will be obtained when the attending physician remains on a case from onset to cure' * * * The doctrine rests on the premise that it is in the patient's best interest that an ongoing course of treatment be continued, rather than interrupted by a lawsuit, because 'the doctor not only is in a position to identify and correct his or her malpractice, but is best placed to do so.'" (*Nykorchuck v Henriques*, 78 NY2d 255, 258, quoting *McDermott v Torre*, 56 NY2d 399, 408.) Because of this, the Court of Appeals has noted that it would be "absurd" to expect a patient to interrupt corrective efforts by filing a notice of claim and commencing a lawsuit (*Borgia v City of New York*, 12 NY2d 151, 156).

In this case, any ongoing treatment by the Pediatric and Rehabilitation Clinics of NCBH would not be interrupted by plaintiff's commencement of an action against the negligent obstetrician whose involvement in plaintiff's care had ceased at his birth. Nor would the commencement of an action seeking to hold HHC vicariously liable for the obstetrician's negligence interrupt plaintiff's treatment at the unrelated HHC clinics and no one seriously contends otherwise.

Interestingly, if there were ever a case that proved this point, this is the one. Although plaintiff served the notice of claim in

October 1990, he continued to be treated by the various clinics for five years thereafter. In fact, he continued to go to defendant's clinics for four years after the complaint itself was served. It follows that the concern underlying the continuous treatment toll, namely, that treatment would be interrupted, is simply not present. Hence, since there was no threat to the doctor-patient relationship, the purposes underlying the continuous treatment toll would not be served.

Moreover, the incongruity of permitting the continuous treatment toll to operate under these circumstances is demonstrated by a simple observation. If plaintiff had commenced an action directly against the obstetrician who committed the malpractice (as opposed to HHC), no one would assert that the subsequent nonnegligent treatment rendered by the various clinics would toll the Statute of Limitations against the negligent obstetrician (*see, e.g., Pierre-Louis v Ching-Yuan Hwa*, 182 AD2d 55, *supra* [toll not available against individual physicians who worked in different clinics in the same hospital]). This being so, there is no basis for finding the continuous treatment toll applicable against HHC where its liability is merely vicarious, i.e., it is vicariously liable for the malpractice of the obstetrician. Stated otherwise, neither policy nor logic supports a toll against HHC when the actual wrongdoer would not be subject to such a toll, and to conclude otherwise, would effectively circumvent the rule enunciated in *Meath v Mishrick* (68 NY2d 992, *supra* [common affiliation with hospital insufficient to support continuous treatment toll]).

In any event, even if the "continuous-treatment-by-an-institution theory" were adopted, there would still be no basis for concluding that issues of fact preclude granting summary judgment in defendant's favor. One of the principal elements of the continuous treatment toll is that: "further treatment is explicitly anticipated by both physician and patient as manifested in the form of a regularly scheduled appointment for the near future, agreed upon during that last visit, in conformance with the periodic appointments which characterized the treatment in the immediate past * * *. [W]here the physician and patient reasonably intend the patient's uninterrupted reliance upon the physician's observation, directions, concern, and responsibility for overseeing the patient's progress, the requirement for continuous * * * treatment * * * is certainly satisfied." (*Richardson v Orentreich*, 64 NY2d 896, 898-899 [citation omitted].) Plaintiff cannot satisfy this requirement for invoking the continuous treatment doctrine.

As previously noted, plaintiff and his mother Ms. Heron

moved to Florida in April of 1989 with the intention of making Florida their new home. At the time of the last visit to NCBH before moving to Florida (one month before), there were no appointments scheduled for any future treatment, and NCBH certainly did not contemplate any further treatment since it had already told Ms. Heron to seek future treatment for plaintiff at Miami Children's Hospital.

Not even plaintiff's first three visits to NCBH after moving back to New York, in or around January 1990, evidence that a continuous course of treatment for plaintiff's Erb's Palsy had been contemplated. As previously noted, the first visit to NCBH after returning to New York in January 1990 was for routine health care maintenance. The next visit was in May 1990 to the Pediatric Clinic for plaintiff's kindergarten physical examination and immunizations, and the third visit in July 1990 was to the Pediatric Walk-in Clinic because of a scalp infection. Then, for an entire year following the July visit, there is no record of plaintiff presenting at NCBH at all. This is hardly evidence that plaintiff had been continuously treated for his Erb's Palsy or that further treatment was contemplated at the time he and his family moved to Florida.

What this makes clear is that even if plaintiff were continuously treated for his Erb's Palsy condition up to the time he moved to Florida, any such treatment came to an end at the time of plaintiff's last pre-Florida visit to NCBH (*see, Allende v New York City Health & Hosps. Corp.*, 90 NY2d 333, *supra*; *Richardson v Orentreich*, 64 NY2d 896, *supra*). It follows that the failure to file the notice of claim within 90 days of this last visit requires dismissal of plaintiff's action (*see, Sarjoo v New York City Health & Hosps. Corp.*, 252 AD2d 449, *supra*).

Apparently recognizing this, Ms. Heron, in her affidavit in opposition to defendant's summary judgment motion, stated: "In 1989, my family moved to Miami. It was our intention to return to New York in 1990. Thus, I informed the doctors of this and continued to bring Jermaine back to New York for his medical treatment. I recall bringing Jermaine back to North Central Bronx Hospital for medical care during this time."

It seems to me that there are several obvious problems with accepting this explanation as a basis for finding continuous treatment after plaintiff moved to Florida. First, although Ms. Heron, in her affidavit, states that it was her intention to return to New York in 1990, at her deposition she unequivocally stated that she had "relocat[ed]" to Florida with the intention of staying there. She also stated that the only reason she and plaintiff moved back to New York was because she missed

her family. Her present contention concerning her intent, therefore, must be regarded as nothing more than a feigned factual issue designed to avoid the consequences of her earlier admission (see, McGuire v Quinnonez, 280 AD2d 587; Buziashvili v Ryan, 264 AD2d 797).

Second, Ms. Heron's claim that she not only intended to continue bringing plaintiff to New York for treatment but in fact did so is demonstrably false. Plaintiff's medical records fail to contain a single notation indicating that he was seen by any doctors in New York during the time he and his mother lived in Florida. In fact, plaintiff fails to identify the dates of any such visits. Nor does he identify which doctors allegedly treated him or, for that matter, what types of treatment were even involved.

Regarding Ms. Heron's claim that she intended to continue having plaintiff treated in New York after she moved to Florida, it strains credulity to the breaking point to believe that anyone would have her child's primary health care provider in the Bronx while living in Miami, especially where the routine treatment that would be involved could have been provided in Miami. This being so, we are not required to suspend common sense and accept what can only be described again as a feigned factual issue (see, id.).

In the end, plaintiff bore the burden of establishing that the continuous treatment toll was applicable. Having failed to meet this burden, I believe that dismissal of the complaint is mandated.