Black v Aspen Dental Mgt., Inc. (2025 NY Slip Op 51788(U))

[*1]

Black v Aspen Dental Mgt., Inc.

2025 NY Slip Op 51788(U)

Decided on November 12, 2025

Supreme Court, Kings County

Mallafre Melendez, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on November 12, 2025
Supreme Court, Kings County

Brenda Black, Plaintiff,

against
Aspen Dental Management, Inc., Individually and doing business as Clear Choice Dental Implant Center, Metro New York Dentistry, PLLC, Individually and doing business as Clear Choice Dental Implant Center, NY Dental Implants, PLLC, Individually and doing business as Clear Choice Dental Implant Center, Maurice Srour, D.D.S., Dorothy Lorenzo, D.D.S., and Farien Franklin, D.M.D., also known as Ferne Franklin, D.M.D., Defendants.

Index No. 506286/2025

Plaintiff
James Laurence Lutfy (ls@landslaw.net)
Lutfy & Santora
1405 Clove Rd
Staten Island, NY 10301
718-442-2272
Defendants Aspen Dental Management, Inc. individually and doing business as Clear Choice Dental Implant Center, Metro New York Dentistry, PLLC, individually and doing business as Clear Choice Dental Implant Center, NY Dental Implants, PLLC, individually and doing business as Clear Choice Dental Implant Center, and Farien Franklin, D.M.D., also known as Ferne Franklin, D.M.D.
Mikayla Barrett, Esq. (mbarrett@sugarmanlaw.com)
Sugarman Law Firm
211 W. Jefferson St.
Syracuse, NY 13202-2455
315-474-2943
Defendants Maurice Srour, D.D.S. and Dorothy Lorenzo, D.D.S.
Maryanne Kolenovsky (mkolenovsky@rawle.com)
Rawle & Hendrson LLP
200 Old Country Road, Suite 400
Mineola, NY 11501
516-294-2001

Consuelo Mallafre Melendez, J.

Recitation, as required by CPLR §2219 [a], of the papers considered in the review:
NYSCEF #s: 17 — 18, 19 — 26, 39 — 44, 45 — 47, 48, 49
Plaintiff moves (Seq. No. 1) for leave to file and serve a Supplemental Summons and Amended Complaint, which would remove defendant Aspen Dental Management Inc., individually and doing business as Clear Choice Dental Implant Center, and add new party defendants Yash Kapadia, D.D.S. ("Dr. Kapadia"), Aaema Athar, D.D.S. ("Dr. Athar"), and Nicole M. Sannito, D.D.S. ("Dr. Sannito").
The part of Plaintiff's motion seeking to remove Aspen Dental Management Inc. from the Complaint is unopposed. There is also no opposition to the addition of Dr. Sannito as a defendant.
The current and proposed Defendants oppose the motion on behalf of Dr. Athar and Dr. Kapadia. They argue that the claims against Dr. Athar and Dr. Kapadia are time-barred, and that the relation-back doctrine does not apply to render them timely.
Plaintiff commenced this action against on February 23, 2025 against Aspen Dental Management Inc., Metro New York Dentistry PLLC, and individuals Maurice Srour, D.D.S., Dorothy Lorenzo, D.D.S., and Farien Franklin, D.M.D., a/k/a Ferne Franklin, D.M.D. Prior to joinder of issue, Plaintiff filed an Amended Complaint adding NY Dental Implants PLLC as a defendant.
Plaintiff's underlying claims of dental malpractice involve treatment which occurred from July 12, 2022 through November 14, 2023 at "Clear Choice Dental Implant Center"[FN1]
 by its employees and agents. According to the attorney affirmation, Plaintiff has since identified Dr. Kapadia, Dr. Athar, and Dr. Sannito as additional employees who are allegedly liable for malpractice.
The Clear Choice/Metro New York Dentistry medical records submitted by Defendants in opposition reflect that Dr. Kapadia treated Plaintiff on three dates from July 12, 2022 to September 15, 2022, Dr. Athar treated Plaintiff on August 4, 2022 and August 18, 2022, and Dr. Sannito treated Plaintiff on multiple dates from September 29, 2022 to November 14, 2023.
Based on these individual dates of treatment, Defendants argue that the statute of limitations for medical malpractice against Dr. Athar expired on February 18, 2025. Even if she had been named in the original Complaint, the statute of limitations had already run when this action was commenced on February 23, 2025. Thus, the Court finds the relation-back doctrine cannot be applied to render the claims against Dr. Athar timely.
Defendants also argue the statute of limitations for Dr. Kapadia expired on March 15, 2025, and they oppose the part of Plaintiff's motion seeking to apply the relation-back doctrine to those claims.
In their affirmation in support of the motion, Plaintiff states that based on relation-back, the claims against Dr. Kapadia and all newly-added defendants in the amended pleading should [*2]be "deemed to have been interposed at the time the claims in the original pleading were interposed" on February 23, 2025, because the original pleading gave notice of the transactions, occurrences, or series of transactions or occurrences to be proved (see CPLR 203 [f]).
Generally, this doctrine applies to newly added defendants only if three conditions are met. First, the Plaintiff must demonstrate that "the causes of action arose out of the same conduct, transaction, or occurrence."
Second, the new party must be "united in interest" with one or more of the originally named defendants. Parties are considered "united in interest" for the purpose of the relation-back doctrine where they would "stand or fall together" such that "judgment against one will similarly affect the other" (Nemeth v K-Tooling, 40 NY3d 405, 415 [2023], quoting Prudential Ins. Co. of Am. v Stone, 270 NY 154, 159 [1936]). The reasoning behind this element is that when two co-defendants are united in interest, "[t]imely service upon one of two such defendants gives sufficient notice to enable him to investigate all the defenses which are available to both defendants within the period of limitations" (Connell v Hayden, 83 AD2d 30, 41 [2d Dept 1981]).
As the Court of Appeals has noted, "vicarious liability may serve as a basis for finding unity of interest," though it is not a requirement (Nemeth v K-Tooling, 40 NY3d 405, 415 [2023]). When one defendant is vicariously liable for another, "the defenses available to two defendants will be identical, and thus their interests will be united" (Sanders at 725-726 [internal quotation marks and citations omitted]). Therefore, in a medical malpractice case, unity of interest may be demonstrated by the employer/employee relationship between a defendant hospital or practice and the individual tortfeasor (c.f. Raschel v Rish, 69 NY2d 694, 697 [1986] [physician was not united in interest because there was no showing of an employer/employee or other vicarious liability relationship with the defendant hospital]).
Finally, the third required prong is that "the new defendant knew or should have known that, but for a mistake by the plaintiff as to the identity of the proper parties, the action would have been commenced against him or her as well." (Sanders v Guida, 213 AD3d 712, 714-715 [2d Dept 2023]). "The linchpin of the relation-back doctrine is whether the new defendant had notice within the applicable limitations period" (i.d., quoting Petruzzi v Purow, 180 AD3d 1083, 1084 [2d Dept 2020]).
This condition involves whether the new defendants had some notice of the original Complaint, such that they "knew or should have known that, but for a mistake by the plaintiff as to the identity of the proper parties, the action would have been commenced against [them] as well" (Myung Hwa Jang v Mang, 164 AD3d 803, 804 [2d Dept 2018]). The Court of Appeals decision in Nemeth emphasized that this prong is less about the reason or "excusability" of the mistake, but what the proposed defendant knew or should have known (Nemeth at 413).
In medical malpractice cases, the Second Department has found that a physician working for the defendant professional corporation, who treated the plaintiff during the period of alleged malpractice, had notice of the lawsuit (Petruzzi v Purow, 180 AD3d 1083 [2d Dept 2020]). "Given these facts, it would not have been reasonable for [the physician] to conclude that the plaintiff intended to proceed only against the defendants named in the original complaint" (i.d.; see also Rivera v Wyckoff Hgts. Med. Ctr., 175 AD3d 522, 525 [2d Dept 2019]; Roseman v Baranowski, 120 AD3d 482, 484-485 [2d Dept 2014]). In contrast, the Second Department has held that this does not apply where the employee "was no longer working for the practice at the time of the commencement of the action, and there is no evidence that she had actual or constructive knowledge within the limitations period of the commencement of the action" [*3](Dixon v De Four Jones, 217 AD3d 838, 840 [2d Dept 2023]).
Here, with respect to the first element of the relation-back doctrine, the opposing party does not dispute that the claims against the new defendants arise from the same events and occurrences as the claims against the original named defendants. All the defendants are alleged to be providers who were involved in Plaintiff's dental work during her course of treatment from July 12, 2022 through November 14, 2023. As such, the first element of the relation-back theory is met in reference to Dr. Kapadia.
On the second element, Defendants argue in opposition that the parties are not "united in interest," because although the original and new defendants "share commonalities, such as working in the same practice," they had distinct roles in Plaintiff's treatment, and a judgment on one defendant dentist's liability will not affect the liability of the others. However, the united-in-interest prong does not require a unity of interest among all the named defendants, only that each new party is "united in interest with one or more of the original defendants" (Sanders, 213 AD3d at 714; Petruzzi at 162 [emphasis added]). One of the original defendants in this action was the practice itself: Metro New York Dentistry, PLLC d/b/a Clear Choice Dental Implant Center. The treatment records substantiate Plaintiff's argument that the proposed new defendants were employees of Metro New York Dentistry, PLLC, or the practice is otherwise vicariously liable for their acts and omissions through apparent or ostensible agency (see Sessa v Peconic Bay Med. Ctr., 200 AD3d 1085 [2d Dept 2021], quoting Hill v St. Clare's Hosp., 67 NY2d 72 [1986] ["a hospital or clinic is responsible to a patient who sought medical care at the hospital or clinic rather than from any particular physician"]). A judgment on the alleged malpractice of these defendants would therefore "stand or fall together" with the vicarious liability claims against the practice on their behalf. Plaintiff has therefore satisfied the second element necessary to the relation-back doctrine, as Dr. Kapadia is united in interest with Metro New York Dentistry, PLLC.
Finally, the third "knew or should have known" prong may be fulfilled where, as here, the newly named defendant has an employment relationship with the existing defendant and was directly involved in the medical care at issue (see Jang at 805). Dr. Kapadia is named throughout the medical records as an employee of the Metro New York Dentistry, PLLC practice who was involved in the course of treatment alleged in Plaintiff's Complaint. Defendants have not disputed or raised any issue of fact as to Dr. Kapadia's employment status when this action was commenced. Thus, this supports a finding that he knew or should have known about the legal action, and it would not have been reasonable to conclude the plaintiff did not also intend to proceed against him. Plaintiff has therefore met the third prong of the relation-back doctrine as to Dr. Kapadia.
Having met all three elements, the Court finds the claims against Dr. Kapadia should relate back to the commencement date of this action on February 23, 2025. Accordingly, the complaint against Dr. Kapadia is deemed timely under this theory.
Plaintiff also argues in reply that even if the relation-back doctrine does not apply, the claims against both Dr. Athar and Dr. Kapadia are still "wholly within the statute of limitations" based on Plaintiff's last day of continuous treatment on November 14, 2023 at Clear Choice/Metro New York Dentistry.
The statute of limitations for a medical or dental malpractice action is two years and six months from "the act, omission, or failure complained of or last treatment where there is continuous treatment for the same illness, injury or condition which gave rise to the said act, omission or failure" (CPLR 214-a). "Under the continuous treatment doctrine, the limitations [*4]period does not begin to run until the end of the course of treatment if three conditions are met: (1) the patient continued to seek, and in fact obtained, an actual course of treatment from the defendant physician during the relevant period; (2) the course of treatment was for the same conditions or complaints underlying the plaintiff's medical malpractice claim; and (3) the treatment is continuous" (Chvetsova v Family Smile Dental, 202 AD3d 657, 658-659 [2d Dept 2022] [internal citations and quotation marks omitted]). The third element is demonstrated "when further treatment is explicitly anticipated by both physician and patient as manifested in the form of a regularly scheduled appointment for the near future" (i.d.).
The policy behind the continuous treatment doctrine "seeks to maintain the physician-patient relationship in the belief that the most efficacious medical care will be obtained when the attending physician remains on a case from onset to cure. Implicit in the policy is the recognition that the doctor not only is in a position to identify and correct his or her malpractice, but is best placed to do so." (McDermott v Torre, 56 NY2d 399, 407-408 [1982] [internal citations omitted]). The doctrine also recognizes that it would be "absurd to require a wronged patient to interrupt corrective efforts by serving a summons on the physician or hospital" (Allende v New York City Health and Hosps. Corp., 90 NY2d 333, 338 [1997], quoting Borgia v City of New York, 12 NY2d 151, 156 [1962]).
It is well established that this doctrine may apply when a patient receives a continuous course of treatment from a medical group or practice, linking the earlier dates of treatment of individual providers to the continued treatment of others within that practice (see Osborn v DeChiara, 165 AD3d 1270, 1272 [2d Dept 2018]; Ozimek v Staten Is. Physicians Practice, P.C., 101 AD3d 833 [2d Dept 2012]). Where a plaintiff demonstrates "she was a patient of the practice" rather than the individual physician, "the continuous treatment [of a later-treating physician] may be imputed to the practice and its employee . . . so as to render the action against [said employee] timely" (Osborn at 1272).
Even in cases where an individual physician is no longer employed by the practice, the statute of limitations for their treatment may be extended "by imputing to him or her the continued treatment provided by subsequently-treating physicians in that group" (Mule v Peloro, 60 AD3d 649, 650 [2d Dept 2009] [internal quotation marks and citations omitted]). In a dental malpractice case similar to this one, the Second Department found triable issues of fact as to whether the statute of limitations against an earlier-treating dentist was tolled by the continuous treatment doctrine. In that case, there was evidence "the continued treatment provided by other dentists in the practice" were part of an ongoing course of treatment for "symptoms ultimately traced to abnormal and severe periodontal disease" (Cohen v Gold, 165 AD3d 879, 883 [2d Dept 2018]).
Here, Plaintiff's Complaint (in both its original and amended versions) asserts on its face that Plaintiff received a "continuous course of treatment" in the relevant period. She also submitted a Clear Choice/Metro New York Dentistry treatment plan and examination notes initially provided in litigation, which did not identify the new proposed defendants by name but showed an initial July 12, 2022 prosthetic exam and consultation for restorative and cosmetic dental implants to "fix teeth" with a "treatment timeline of 1+ year." These records continue through an upper arch replacement surgery in August 2022, post-operative follow-ups and impressions in September-October 2022, lower dentures and prosthetic adjustments in November 2022, additional follow-up and prosthetic adjustments in January 2023, denture impressions and wax try-in in February-March 2023, "final" upper prosthetics and adjustments in April 2023, "delivery of trial teeth — upper hybrid" in May 2023, temporary bridge in June [*5]2023, and repeated follow-up examinations and adjustments due to patient dissatisfaction in August, September, October, and November 2023.
Defendants' own medical and billing records, submitted in opposition, identify Dr. Athar's involvement in the pre-surgery and conversion appointments in August 2022, and Dr. Kapadia in the initial prosthetic exam, interim lower denture delivery, and post-operative appointments in July-September 2022. Although they had no further direct involvement in her treatment, other providers within the practice continued to treat Plaintiff and follow up on her upper and lower dental implants. For each individual dentist, including Dr. Athar and Dr. Kapadia, her overall treatment plan is consistently labelled "Upper Phased Treatment and Lower Denture" from July 2022 through January 2023, and "Upper Phased Treatment-Hybrid 2nd Phase" from January 2023 through November 2023
The facts indicating continuous treatment in this case are stronger than Cohen, where the Second Department found issues of fact as to the whether the plaintiff was treated for the same underlying condition or complaints over a period of years, as her symptoms could be "ultimately traced" to periodontal disease. Here, the records clearly demonstrate that Plaintiff was undergoing a continuous course of treatment for the same underlying condition giving rise to her claims: an overall restorative dental plan broken down into a series of appointments and phases. The providers at Clear Choice/Metro New York Dentistry undertook a complex denture implant plan with a timeline of over one year. She received exams, impressions, and surgeries from the various providers, and she continued seeking corrective adjustments through November 14, 2023.
Rather than seeking and obtaining treatment from an individual provider, the records reflect that she had a relationship with the practice itself, that she sought and obtained an "actual course of treatment" for the same condition during the relevant period, and that there was an explicit anticipation of further treatment in the form of scheduled appointments and a multi-phased denture implant and adjustment plan. This Court finds that Plaintiff met their burden of establishing that there existed a continuous course of treatment in relation to the claims in this case.
As the continuous treatment argument was raised by Plaintiff for the first time in reply, the Court issued an Interim Order dated October 10, 2025, permitting Defendants to address this argument in a surreply affirmation. "An argument raised for the first time in reply should not be considered unless there is an opportunity to respond and submit papers in surreply" (Fed. Natl. Mtge. Assn. v NB 1168 Realty, LLC, 234 AD3d 938, 939 [2d Dept 2025]).
In their surreply, Defendants argue that there is no "agency or other relevant relationship" between Dr. Athar, Dr. Kapadia, and the subsequent providers at Metro New York Dentistry. The argue that "where the continuing treatment is provided by someone other than the allegedly negligent practitioner, there must be an agency or other relevant relationship between the health care providers" (Allende v New York City Health and Hosps. Corp., 90 NY2d 333, 339 [1997]). However, in Allende, the plaintiff had received treatment "at a different medical facility, by different doctors" (i.d.). The Court of Appeals considered whether the common ownership of those facilities by New York City Health and Hospitals Corporation could establish a "relevant relationship," imputing the continued treatment from one hospital to the other. In this case, all treatment involved providers at the same facility for the same dental conditions.
In another case cited by Defendants, the Second Department held that, standing alone, the fact various providers were "coemployees" of the same hospital over a period of years "is insufficient for the imputation of the latter's continuous treatment to the former for the purpose [*6]of tolling the Statute of Limitations" (Pierre-Louis v Hwa, 182 AD2d 55, 59 [2d Dept 1992]). In Pierre-Louis, the patient saw various providers across the hospital's Cardiology, Arthritis, and Dermatology clinics, and the court noted "there is no proof . . . that the defendants and their successors practiced as a team or that the clinics in which they worked operated in a manner resembling a medical group" (i.d. at 60). In contrast, as is relevant here, courts have consistently found continuous treatment applies to providers in the same medical or dental group practice where the plaintiff was a patient of that practice (see Osborn at 1272; Cohen at 883).
Here, the Court has found a relevant continuing relationship between the dental providers at Metro New York Dentistry. Plaintiff has established through their documentary evidence that the treatment involved falls within the continuous treatment doctrine and renders her claims against Dr. Athar and Dr. Kapadia timely. The moving defendants have not raised an issue of fact. The subsequent treatment of other providers within the Clear Choice/Metro New York Dentistry are therefore imputed to them and constitute a "continuous treatment for the same illness, injury or condition" which gave rise to her claims through November 14, 2023.
Based on that date, the statute of limitations does not expire until May 14, 2026, and Plaintiff's claims against the new proposed defendants are not time-barred, regardless of whether the relation-back doctrine is applied.
Defendants' additional argument on vicarious liability is misplaced as to the continuous treatment doctrine, and it is raised improperly in the surreply affirmation.
Pursuant to CPLR 3025 (b), leave to amend a pleading should be freely given in the absence of prejudice "unless the proposed amendment is palpably insufficient or patently devoid of merit" (Calamari v Panos, 131 AD3d 1088, 1089 [2d Dept 2015]). "A motion for leave to amend a complaint . . . to add a cause of action or theory of recovery that is time-barred under the applicable statute of limitations is patently devoid of merit" (Deutsche Bank Natl. Tr. Co. v McAvoy, 188 AD3d 808, 810 [2d Dept 2020]).
As Plaintiff's claims are not time-barred or otherwise "patently devoid of merit" with respect to Dr. Athar and Dr. Kapadia, Plaintiff's motion to amend the Complaint is granted. That portion of the motion to amend the Complaint to add Dr. Sannito and remove Aspen Dental Management, Inc. is granted without opposition.
Accordingly, it is hereby:
ORDERED that Plaintiff's motion (Seq. No. 1) for leave to amend the Complaint to remove defendant "Aspen Dental Management Inc., individually and doing business as Clear Choice Dental Implant Center," and add new defendants Yash Kapadia, D.D.S., Aaema Athar, D.D.S., and Nicole M. Sannito, D.D.S., is GRANTED; and it is further
ORDERED that Plaintiff shall file and serve the Supplemental Summons and Amended Complaint upon the newly added Defendants within 30 days of the date of this Order, and they shall serve Answers in accordance with the CPLR.
This constitutes the decision and order of this Court.
ENTER.
Hon. Consuelo Mallafre Melendez, J.S.C.

Footnotes

Footnote 1:Defendants Metro New York Dentistry, PLLC and NY Dental Implants, PLLC are named as corporate defendants doing business as Clear Choice Dental Implant Center.